UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT CAYNE and PHYLLIS CAYNE, husband and wife; DAVID T. KUO and BESS LEE CHANG, husband and wife; RONNIE RIVERA, individually; SEAN RIVERA, individually; KEN McELROY and LAURA McELROY, husband and wife; *et al.*,<br>                              Plaintiffs,<br>vs.<br>WASHINGTON TRUST BANK, a Washington corporation; and WEST SPRAGUE HOLDINGS, LLC, a Washington limited liability company; JOHN/JANE DOES I-V,<br>                              Defendants. | Case No. 2:12-cv-0584-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

**PROCEDURAL BACKGROUND**

Currently pending before the Court is Defendants' Washington Trust Bank and West Sprague Holding, LLC's Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) (Dkt. 13). This lawsuit was originally filed in Idaho state court, and was removed by Defendants to this Court. The underlying dispute primarily centers upon expensive membership deposits paid by Plaintiffs to join the now-defunct "Club at Black Rock," which was envisioned to be an exclusive, world-class golf resort and residential community, but which disintegrated in late 2010. Plaintiffs contend that they were promised by the developer that such deposits would be refunded to them if the Club at Black Rock were to cease operation, and that Defendants are responsible to make good on that promise.

**MEMORANDUM DECISION AND ORDER - 1**

Robert Cayne and Phylliss Cayne, David T. Kuo and Bess Lee Chang, Ronnie Rivera, Sean Rivera and Ken McElroy and Laura McElroy ("Plaintiffs") raise three claims: (1) breach of contract (as to the Membership Agreement and Membership Plan); (2) misrepresentation and/or constructive fraud; and (3) violation of the Idaho Consumer Protection Act.  (Dkt. 1-1.) Defendants contend that none of such claims entitles Plaintiffs to relief as a matter of law, as further described in their Motion for Judgment on the Pleadings (Dkt. 13).

Following the oral argument on this motion, the Court issued an order addressing a potential conflict of laws question that had arisen in that hearing, in regard to the two main contracts at issue.  (Those contracts, which are described more fully to follow, are referred to in this decision as the Membership Agreement and the Deed in Lieu contract.)  In that order, the Court decided to apply Idaho law to the interpretation and enforcement of the Membership Agreement, and Washington law to the interpretation and enforcement of the Deed in Lieu agreement.[1]  (Order, Dkt. 37.)

## FACTUAL BACKGROUND

A.   The Club at Black Rock and the Membership Agreement

The legal entity known as Club at Black Rock, LLC (the "LLC") developed the Club at Black Rock ("Black Rock") from 2000 to 2003 as a private, luxury resort, residential community on Lake Coeur d'Alene.  (Compl., Dkt. 1-1, ¶ 17.)  Plaintiffs are former members of Black Rock

---

[1] For purposes of this motion, the Court applies Idaho law, as the law of the forum, to all issues raised by the pending motion, except to the interpretation of the Deed in Lieu contract. *See Matanuska Val. Lines, Inc. v. Molitor*, 365 F.2d 358, 360 (9th Cir. 1966) (in cases where jurisdiction is founded upon diversity, the district courts are to apply the substantive law of the forum state).

**MEMORANDUM DECISION AND ORDER - 2**

who (with the exception of the McElroys) joined Black Rock in the summer of 2006. The McElroys joined in July 2010. (*Id.* ¶¶ 8-13.)

To become a member, each Plaintiff paid a "Membership Deposit" in the amount of $125,000. *Id*. ¶ 23. Each, as with other members of the Club, was required to sign a contract titled "Membership Agreement," which was also then signed by a representative of "The Club at Black Rock, LLC, d/b/a The Club at Black Rock." (Answer, Ex. D-7, Dkt. 11, Membership Agreement, p. 5.) The Membership Agreement, in turn, provided that the members' rights and obligations were governed by a so-called "Membership Plan" for Black Rock. (*See* Answer, Ex. D-6, Dkt. 8-7 ("Membership Plan."))

Under the Membership Agreement, a member "acquires a revocable license to use [Black Rock's] facilities" in accordance with the Membership Agreement and Membership Plan. The Membership Agreement goes on to say that membership is "not an investment in the Company [Club at Black Rock, LLC]," nor does membership "provide a member with an equity or ownership or any other property interest in the Company or [Black Rock's] facilities." Further, a member's rights and privileges "are subordinate to the lien of any mortgage encumbering the Club facilities from time to time" and the LLC reserved the right "to terminate or modify the Membership Plan [and] to sell, lease or otherwise dispose of [Black Rock's] facilities." (Membership Agreement, p. 4; *see also* Membership Plan, pp. 13-14.)

**MEMORANDUM DECISION AND ORDER - 3**

**B.     Washington Trust Bank and the Shut-Down of Black Rock**

The LLC obtained $12,501,000.00 in development financing from Washington Trust Bank ("Washington Trust")[2], in four separate loans. (Answer, Ex. D-1, Dkt. 8-1.) The loans were secured by the real and personal property connected with the operation of Black Rock. (Compl. ¶ 18; Answer, Ex. D-1.)

The LLC fell into financial difficulties, which led to a negotiated work-out agreement with Washington Trust executed on August 11, 2010, referred to as the "Agreement for Deed in Lieu of Foreclosure" (hereafter, "DIL Contract"). (*See* Answer, Ex. D-2, Dkt. 8-2–3.) Contemporaneous with the signing of that agreement, the LLC also executed a Non-Merger Warranty Deed in Lieu of Foreclosure ("Deed in Lieu") with Washington Trust as the "Grantee." (Answer, Ex. D-1.) Washington Trust agreed "to accept delivery of said deed as the full and unconditional release and cancellation of all debts, liabilities, obligations, costs and charges owed by [the LLC] to [Washington Trust]" on the loans listed therein. (*Id.*) The personal property connected to Black Rock was then conveyed by the LLC to Washington Trust through a Bill of Sale and Assignment agreement. (DIL Contract, Ex. E, Dkt. 8-3.)

According to the language of the DIL Contract, Washington Trust and the LLC planned on Black Rock continuing to operate, stating, by way of example, that "[Washington Trust] and [the LLC] believe that the transfer of the Property in lieu of foreclosure is necessary for continued operation of [Black Rock] as set forth in Section 6.3." (DIL Contract, p. 7.) Washington Trust was required to "reasonably endeavor to continue stabilized operations of

---

[2] The Court uses "Washington Trust" and "Defendants" interchangeably and such references include both Washington Trust Bank *and* West Sprague Holdings, LLC.

**MEMORANDUM DECISION AND ORDER - 4**

[Black Rock], at least through the 2010 season, at a level of service and amenities that is consistent with the prior operation of [Black Rock], provided that the membership is maintained with a sufficient number of dues paying members to sustain operation of [Black Rock] as reasonably determined by [Washington Trust]." (*Id*. at p. 13-14 (Section 6.3.))

On August 23, 2010, Washington Trust assigned all of its rights in the various collateral and loan documents to co-defendant West Sprague Holdings, LLC through an "Assignment of Promissory Notes, Security Agreements, and other Related Loan Documents." (Answer, Ex. D-4, Dkt. 8-5.) Then, on October 29, 2010, two months after the DIL Contract had been executed, Black Rock sent a letter to members informing them that their membership agreements were being terminated effective October 31, 2010. (Compl., ¶ 32.) The Club at Black Rock, LLC remained an active Idaho limited liability company until it was administratively dissolved on September 7, 2011. (Answer, Ex. D-3, Dkt. 8-4.)

## DISCUSSION

### A.    The Rule 12(c) Legal Standard

Federal Rule of Civil Procedure 12(c) permits a judgment on the pleadings when, even "taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *McGann v. Ernst & Young*, 102 F.3d 390, 392 (9th Cir.1996). In deciding the viability of a plaintiff's claims in the face of a Rule 12(c) motion, the Court will apply the same legal standards applicable to motions brought under Rule 12(b)(6). *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054, n. 4 (9th Cir.2011) ("Rule 12(c) is functionally identical to Rule 12(b)(6) and...the same standard of review applies to motions brought under either rule").

**MEMORANDUM DECISION AND ORDER - 5**

Hence, Defendant's motion is a post-answer, threshold challenge to the sufficiency of Plaintiffs' claims for relief. The relevant inquiry is whether the plaintiff's allegations are sufficient under Federal Rule of Civil Procedure 8(a), which sets forth the minimum pleading requirement, i .e., that the plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When reviewing a motion to dismiss, the court must accept as true all non-conclusory, factual (not legal) allegations made in the complaint, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Erickson v. Pardus*, 551 U.S. 89 (2007), and draw all reasonable inferences in favor of the plaintiff, *Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir.2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In addition, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. In sum, dismissal may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988).

Further, the Court may not consider any evidence contained outside the pleadings without converting the motion to one for summary judgment. *See* Fed.R.Civ.P. 12(b); *United States v. Ritchie,* 342 F.3d 903, 907–908 (9th Cir.2003). "A court may, however, consider

**MEMORANDUM DECISION AND ORDER - 6**

certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment." *Id*. at 908 (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir.2002); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir.1994); 2 James Wm. Moore et al ., Moore's Federal Practice § 12.34[2] (3d ed.1999)).

**B.     Defendants' Challenge to Plaintiffs' Breach of Contract Claim Does Not Justify Dismissal at this Time.**

**1.     The Language of the DIL Contract Does Not Entitle Defendants to Judgment as a Matter of Law**

Plaintiffs allege that Defendants "took title" to Black Rock subject to the terms of the Membership Agreement and the then existing Membership Plan, and by doing so necessarily assumed liability for the repayment of the deposits to Plaintiffs. The alleged right to a refund stems from language contained in the Membership Agreement which provides that if there is a termination of the Membership Plan, termination of membership, or a discontinuance of all (or substantially all) of Black Rock's facilities, the member is entitled to a refund within 30 days. (Membership Agreement, p. 4.)  Plaintiffs allege that Defendants  breached that duty when they failed to refund Plaintiffs their deposits. (Compl.,¶¶ 46-49.)

Defendants disavow any such liability, contending that their position in that regard is made clear by other language in the DIL Contract. The DIL Contract does contains language assigning "all contracts . . . and agreements, of every kind and nature" to Washington Trust. However, Defendants emphasize other language in the DIL Contract which states that the agreement does not "create any obligations on the part of [Washington Trust] to third parties"

**MEMORANDUM DECISION AND ORDER - 7**

making claims against the LLC, and additionally that Washington Trust "does not assume or agree to discharge any liabilities . . ."  (DIL Contract, p. 14 & Ex. E.)

The question, then, is whether Plaintiffs have sufficiently stated a claim that Washington Trust is liable to the Plaintiffs for the refund of their deposits, under one or more of the theories contained in their claims.  The answer to that question requires both an assessment of the factual plausibility of such claims, and an assessment of what law to apply.  In this case, there are questions of whether common law or statutory law governs, and also whether or not Washington or Idaho provides the source of such law.  Of particular relevance is the question of whether to apply common law, or provisions of the Uniform Commercial Code ("UCC"), both of which are cited by the parties in their arguments.  The Court previously held that Washington law applies to the interpretation of the DIL Contract.  (Order, Dkt. 37.)  Because the scope of an assignment of a contract under Washington common law differs from the scope of a contract assignment governed by the UCC,[3] the Court must first determine whether common law or the UCC applies here.

To decide this, it is most sensible to examine "what" is conveyed in the DIL Contract, and the Deed in Lieu, so that the Court can determine whether the contract involves a subject

---

[3] Under Washington law, an assignee in an executory contract, *i.e.*, one in which an obligation relates to a future event, is not liable on the underlying obligations in the contract unless there has been an *express assumption* of those obligations.  *Lewis v. Boehm*, 947 P.2d 1265, 1268 (Wash. Ct. App. 1997) (citing to *Higgenboatham v. Topel*, 511 P.2d 1365 (Wash. Ct. App. 1973)).  Under Washington's adoption of Article 2 of the UCC, an assignment of "the contract" is an assignment of rights and "unless the language or the circumstances . . . indicate the contrary, it is a delegation of performance of the duties of the assignor and its acceptance by the assignee constitutes a promise by him or her to perform those duties."  RCW 62A.2-210 (2013).  Put in other terms, under common law, an obligation is assigned only if assumed and pursuant to the UCC, obligations are assigned unless there is a contrary indication.

**MEMORANDUM DECISION AND ORDER - 8**

that is governed by the UCC (such as the transfer of goods), or something that is not (such as the transfer of real property).

The DIL Contract divides the conveyed property into two categories: real property and personal property.  (DIL Contract, Art. 1, 2.)  In describing the personal property, Article 2 references a Bill of Sale and Assignment.[4]  (DIL Contract, § 2.2.)  The Bill of Sale and Assignment, in turn, provides that "the Club does hereby grant, bargain, sell, convey, assign, and transfer" to Washington Trust ". . . all assignable permits, licenses, contracts, approvals, applications and agreements, of every kind and nature, relating to the Club . . ."  (DIL Contract, Ex. E, Dkt. 8-3.)

The Court then has looked to the Membership Agreement and Membership Plan.  The Membership Agreement provides, in pertinent part:

> . . . membership in [Black Rock] *permits the member to use the Club facilities* referred to in the Membership Plan in accordance with the Membership Plan and Rules and Regulations.  Membership in [Black Rock] is not an investment in the Company referred to below, or [Black Rock] facilities, and does not give a member a vested or prescriptive right or easement to use [Black Rock] facilities.  A member *only acquires a revocable license to use* [Black Rock] facilities in accordance with the terms and conditions of the Membership Plan and Rules and Regulations, as the same may be amended from time to time, and this Membership Agreement.

(Membership Agreement, p. 4 (emphasis added.))

UCC Article 2 applies to "transactions in goods."  RCW 62A.2-102.  Goods are defined

---

[4] The reference here is to Article 2 of the DIL Contract.  The reader will note that the headings of the DIL Contract are also the same as the names given to different chapters of the UCC; hence, the possibility for confusion.

**MEMORANDUM DECISION AND ORDER - 9**

as "all things (including specially manufactured goods) which are moveable at the time of identification to the contract for sale." RCW 62A.2-105.  As detailed above, the Membership Agreement gave Plaintiffs permission to "use [Black Rock] facilities," but only by way of a "revocable license...."  Such a license is not a "sale" of "goods" and accordingly, Article 2 does not govern this portion of the transaction.  *See Tseng v. Home Depot USA, Inc.*, 2006 WL 1587413, *5 (W.D. Wash. June 7, 2006) (settlement agreement involving licenses, covenant not to sue, release of claims and a sale of certain goods was not primarily a sale of goods and not governed by Article 2); *Tacoma Athletic Club, Inc. v. Indoor Comfort Systems, Inc.*, 902 P.2d 175 (Wash. Ct. App. 1995).  (*See also* Compl.¶ 24 ("the acquisition of membership in the Club actually created a licensor/licensee relationship between the Club and its members."))

The nature of what obligations were assumed, or not assumed, is therefore governed by Washington common law, which provides that an assignee in an executory contract is not liable on the underlying obligations, *unless* there has been an express assumption of those obligations.  *Lewis v. Boehm*, 947 P.2d 1265, 1268 (Wash. Ct. App. 1997) (citing to *Higgenbotham v. Topel*, 511 P.2d 1365 (Wash. Ct. App. 1973)).  Hence, the Court turns to a closer examination of what was "assigned" by the LLC and what was "assumed" by Washington Trust.

The Court is satisfied, for purposes of considering Plaintiffs' claims against a Rule 12(c) challenge, that the Membership Agreement and its related Membership Plan fall within the definition of "contracts" and "agreements" "of every kind and nature" that were assigned by the LLC to Washington Trust.  There is nothing in the DIL Contract that excludes these documents from the transaction, and, indeed, there are myriad categories of contracts and agreements that

**MEMORANDUM DECISION AND ORDER - 10**

are expressly transferred under the DIL Contract.[5] Therefore, the remaining issue is whether obligations, specifically the refund of membership deposits, under the Membership Agreement were expressly assumed by Washington Trust.

Section 7.4 of the DIL Contract is entitled "Obligations of [Washington Trust] to Third Parties." That section states that Washington Trust's acceptance of the property pursuant to the DIL Contract "shall not create any obligations . . . to third parties that have claims of any kind whatsoever against [the LLC] with respect to the Property."[6] It goes on to say that Washington Trust "does not assume or agree to discharge any liabilities pertaining to the Property that

---

[5] In the paragraph assigning "permits, licenses, contract, approvals, application and agreements" the Bill of Sale and Assignment does carve out an exception for "any permits and licenses relating to Alcoholic Liquor as defined in Idaho Code 23-105." (DIL Contract, Ex. E.)

[6] Property includes the Real Property described in Exhibit A to the DIL Contract and the Personal Property described in Exhibit B to the DIL Contract. (Dkt. 8-2, pp. 24-33 and Dkts. 8-2, pp. 34-55, 8-3, pp. 1-5, respectively.) The Personal Property was described in the DIL Contract to include, but not be limited to: Equipment, Inventory, Chattel Paper, Accounts, General Intangibles, Furniture, Fixtures, Vehicles, and Vessels. (*See* DIL Contract, p. 1.)

The personal property that is "grant[ed] . . ., assign[ed], and transfer[ed]" to Washington Trust is more specifically described in the Bill of Sale as: "All inventory, chattel paper, accounts, furniture, and all fixtures . . .; All deposits and bonds of [Black Rock]; . . . All assignable permits, licenses, contracts, approvals, applications and agreements, of every kind and nature . . ." (DIL Contract, Ex. E, Dkt. 8-3, pp. 37-39.)

**MEMORANDUM DECISION AND ORDER - 11**

occurred *prior to the date of Closing,* except as specifically assumed by Washington Trust." [7] [8] (DIL Contract § 7.4 (emphasis added)).

Washington Trust argues, pursuant to this provision, that it did *not expressly assume* any obligations and liabilities as required under Washington law, but rather, that it *expressly disclaimed* any assumption of obligations and liabilities. The crucial language in this section is the reference to "liabilities . . . prior to the date of Closing." Washington Trust relies on this language to argue that it is not responsible for the refund of the deposits to Plaintiffs pursuant to the terms of the Membership Agreement. It follows, then, that Washington Trust contends these "liabilities" accrued prior to the date of Closing, as the "express" language of this section makes specific reference to just that – liabilities that accrued *prior* to the date of Closing. However, Plaintiffs contend that the the obligation for repayment of their Membership Deposits did not accrue until Washington Trust closed down Black Rock and terminated the Membership Agreements, which occurred on October 31, 2010 – *after* the Closing date of the deed in lieu transaction. Accordingly, it is arguable that these liabilities have not been disclaimed by Section

---

[7] The transaction closed on August 11, 2010.

[8] Washington Trust also cites to two other provisions from the DIL contract in support of this argument – Section 9.12 ("[t]he provisions of this Agreement are solely between and for the benefit of [Washington Trust] and [Black Rock], and do not inure to the benefit of, or confer rights upon, any third party)" and Section 9.10 ("[t]he relationship between [Washington Trust] and [Black Rock] is that of debtor and creditor. Nothing contained in this Agreement will be deemed to create a partnership or joint venture between [Washington Trust] and [Black Rock], or between [Washington Trust] and any other party, or to cause [Washington Trust] to be liable or responsible in any way for the actions, liabilities, debts, or obligations of [Black Rock].) (DIL Contract, pp. 17-18.) The Court finds that these provisions do not alter the Court's analysis and the relevance of Section 7.4.

**MEMORANDUM DECISION AND ORDER - 12**

7.4, and that, by a plausible reading – direct or inferential – of the entirety of the DIL Contract, one can reasonably argue that such liabilities have been assumed.

### 2. The Membership Agreement Language Gives Support to Plaintiffs' Contentions that they have Stated a Plausible Breach of Contract Claim

The Membership Agreement contains the following language:

> In the event the Club facilities are sold *and the buyer assumes* liability for the repayment of the appropriate membership deposit as provided in the [Membership] Agreement, the member shall look solely to the new owner for repayment of the membership deposit and the seller of the Club facilities shall be released from liability for repayment thereof. In the event of a sale of the Club facilities, the buyer shall take title *subject to the terms* and provisions of the then existing Plan.

(Membership Agreement, p. 4 (emphasis added.))

Plaintiffs argue this "subject to" language means that when Washington Trust took title to Black Rock, it assumed the obligation to refund the membership deposits. Washington Trust strongly disagrees, arguing, first, that this paragraph is not applicable because the deed in lieu of foreclosure was not a sale, and second, that this provision only contemplates that a "new owner" is responsible for the refund of the membership deposits only when and if that new owner *assumes liability* for their repayment. Washington Trust argues that because it did not assume liability for the repayment of the membership deposits, it cannot be held liable.

Regardless of whether this transaction was a "sale" and thus triggered this provision, it creates an issue much like the one addressed above.[9] First, the provision indicates that a new

---

[9] In the briefing, much is made of whether the Deed in Lieu transaction was a "sale," with the argument centered over whether or not there was a "sale" of Black Rock. Defendants cite to *Richard B. Smith Real Estate, Inc. v. Knudsen*, 691 P.2d 1212 (Idaho 1984) for the proposition that a deed in lieu is *not* a sale and thus, this provision in the Membership Agreement was not

**MEMORANDUM DECISION AND ORDER - 13**

owner is responsible for the refund of the membership deposits when liability is *assumed*. But it goes on to say a buyer takes title *subject to the terms* of the Membership Plan, which arguably includes the obligation to refund the membership deposits. Therefore, the same question addressed above still remains – did Washington Trust assume the obligation to repay the membership deposits?

### 3. The Statute of Frauds is Satisfied

Washington Trust contends that Plaintiffs' claim for breach of contract is barred by Idaho's Statute of Frauds,[10] specifically Idaho Code § 9-505, which requires that a "special promise to answer for the debt, default or miscarriage of another" is invalid unless it is "in writing and subscribed by the party charged, or his agent."[11] Plaintiffs argue that Washington

---

triggered. *Knudsen* involved a quitclaim deed that was executed in lieu of foreclosure. The question before the court was whether a broker's commission was due under a brokerage contract that provided the defendants were to receive a 6% commission if the owner "sells, trades, or in any way disposes of the property," that is, did the deed in lieu of foreclosure trigger this provision. The court held that the word "dispose" was to be given a narrow construction as "the purpose of the broker's contract was to compensate [defendants] for assisting the [plaintiffs] in the sale of their home" and that a broader construction would "require commission payment for transfers unrelated to the voluntary disposition of the home." *Id*. at 1214. The court's holding hinged on the purpose of paying the commission under the brokerage contract. The factual situation in *Knudsen* is not analogous to the facts of this case and accordingly, the Court finds that *Knudsen* is not dispositive on the issue of whether or not this provision in the Membership Agreement is triggered.

[10] As discussed in footnote 1, with respect to every claim except the interpretation of the DIL Contract, the Court will be applying Idaho law. Plaintiffs are suing for breach of the Membership Agreement and Plan which is to be governed by Idaho law. Regardless, as noted *supra* in footnotes 11 and 12, Washington law has a similar Statute of Frauds statute and exception as discussed herein.

[11] Washington's Statute of Frauds requires a "special promise to answer for the debt, default, or misdoings of another person" to be "in writing, and signed by the party to be charged." RCW 19.36.010.

**MEMORANDUM DECISION AND ORDER - 14**

Trust is not "answering" for the LLC's debt, but instead has assumed that debt, making it an original promise which is excepted from the Statute of Frauds. *See* I.C. 9-506(2); *Treasure Valley Plumbing and Heating, Inc. v. Earth Resources Co., Inc.*, 766 P.2d 1254, 1259 (Idaho 1988) ("An original obligation of the promisor is not covered by the terms of the statute of frauds.")[12]

The immediate relevance of the Statute of Frauds depends upon whether Washington Trust assumed the obligation to repay the membership deposits. For purposes of this motion under the Rule 12(c) standard, and without deciding the question, the Court will presume that Washington Trust did assume the obligation to repay the membership deposits. An assumed obligation falls within the exception to the statute of frauds as an original promise and need not be in writing. *Id. See also, M.T. Deaton & Co. v. Leibrock*, 759 P.2d 905, 908-09 (Idaho 1988) (defendants, as assignees who assumed third party's liabilities, were the original promisors for purposes of Idaho's statute of frauds). Accordingly, the Court finds that Washington Trust's argument that this cause of action be dismissed as barred by the statute of frauds is not persuasive.

### C. Plaintiffs' Claim for Misrepresentation/Constructive Fraud is Deficient but Leave to Amend will be Allowed

Plaintiffs' second claim alleges misrepresentation and constructive fraud. (Compl. ¶¶ 52-60.) Plaintiffs allege that Defendants assumed a "special relationship of trust and confidence" with Plaintiffs after they acquired Black Rock and that Defendants violated their duties of

---

[12] Washington has the same "original promise" exception to the Statute of Frauds. *See Smaby v. Shrauger*, 115 P.2d 967 (Wash. 1941).

**MEMORANDUM DECISION AND ORDER - 15**

"honesty, transparency, forthrightness and good faith" by failing to disclose the true financial condition of Black Rock, and failing to reveal their intention to close Black Rock.  (*Id*.)

Constructive fraud comprises "all acts, omissions and concealments involving a breach of legal or equitable duty, trust or confidence and resulting in damage to another." *McGhee v. McGhee*, 353 P.2d 760, 762 (Idaho 1960).  An action for constructive fraud "exists when there has been a breach of duty arising from a relationship of trust and confidence, as in a fiduciary duty." *Taylor v. McNichols*, 243 P.3d 642, 662 (Idaho 2010).  "Examples of relationships from which the law will impose fiduciary obligations on the parties are: members of the same family, partners, attorney and client, executor and beneficiary of the estate, principal and agent, insurer and insured, or close friends." *Id*. (quoting *Mitchell v. Barendregt*, 820 P.2d 707, 714 (Idaho Ct. App. 1991) (found to be in error on other grounds by *Polk v. Larrabee*, 17 P.3d 247, 258 (Idaho 2000)).

Defendants have argued that Plaintiffs have not pled at least one essential element of a constructive fraud claim in this case – that of a special relationship of trust and confidence between Plaintiffs and Defendants.  The Court agrees.  From the record before the Court, there is no direct contractual relationship between the parties, much less a relationship that is of the same nature as that of  "family members" or "executor and beneficiary of the estate" or of other fiduciary nature.  *See Mitchell v. Barendregt*, 820 P.2d 707, 714 (Idaho Ct. App. 1991) (finding there was a not a "relationship of trust and confidence" between two parties to a contract).

However, when addressing Rule 12(c) motions, courts have discretion in allowing leave to amend.  *See In re Dynamic Random Access Memory Antitrust Litig*., 516 F. Supp. 2d 1072, 1084 (N.D. Cal. 2007) (". . . courts generally have discretion in granting 12(c) motions with

**MEMORANDUM DECISION AND ORDER - 16**

leave to amend, particularly in cases where the motion is based on a pleading technicality"). Such an opportunity to amend is the favored course in the Ninth Circuit, when ruling upon threshold challenges to the sufficiency of a complaint. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("[I]n dismissing for failure to state a claim under Rule 12(b)(6), a district court should grant leave to amend even if not request to amend was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.") While the Court is hard-pressed to identify facts that might give rise to a cognizable constructive fraud claim on the current record, the case is still at its most early stage, there has been no discovery, and the Court finds the best course is to allow Defendants to amend this claim if they so desire.

**D.      Plaintiffs' ICPA Claim is Deficient, but Leave to Amend will be Allowed**

Plaintiffs' third claim alleges violations of the Idaho Consumer Protection Act ("ICPA"), Idaho Code § 48-601 *et seq.*  Plaintiffs contend that Defendants, as buyers of Black Rock, continued to operate, promote, market and sell memberships in Black Rock and their acts and omissions in doing so constituted unfair or deceptive methods and practices. (Compl. ¶¶ 61-65.)

To bring an ICPA claim, "the aggrieved party must have been in a contractual relationship with the party alleged to have acted unfair or deceptively." *Taylor v. McNichols*, 243 P.3d 642, 661 (Idaho 2010) (*citing Haskin v. Glass*, 640 P.2d 1186, 1189 (Idaho Ct. App. 1982)).  Plaintiffs contend this element is met by virtue of the purchase of memberships. However, Plaintiffs purchased their memberships from the LLC, not from Defendants. They have no contractual relationship with Defendants as alleged in the Complaint.

**MEMORANDUM DECISION AND ORDER - 17**

Further, the ICPA has a statute of limitations of two years. *See* I.C. § 48-619 ("No private action may be brought under this act more than two (2) years after the cause of action accrues.") Plaintiffs filed their Complaint on October 31, 2012, which means the grounds for their ICPA claim cannot be based on actions that occurred *prior* to October 31, 2010. According to Plaintiffs' allegations, their ICPA claim is based on the purchase of their memberships, which occurred prior to October 31, 2010 for all Plaintiffs.[13] Because Plaintiffs' claims, as presently framed, fall outside the statute of limitations and there is a lack of a contractual relationship between the parties, the Court finds that Plaintiffs have failed to state a plausible claim for relief under the ICPA.

Plaintiffs, however, have sought to expand upon the ICPA claim in their briefing on this motion. For example, Plaintiffs argue they have standing to sue because "Defendants are the assignees of the contractual obligations" owed by the LLC, which requires Defendants to refund the membership deposits. They also argue that Washington Trust promised to reasonably continue the operation of Black Rock through the 2010 season, yet then terminated the memberships five weeks later. (*See* Plaintiff's Response, p. 18, Dkt. 17; DIL Contract, § 6.3.) Hence, as discussed above with respect to the constructive fraud claim and given the early stage of this litigation, the Court finds it appropriate to allow Plaintiffs the opportunity to amend their ICPA claim.

---

[13] The majority of the Plaintiffs joined Black Rock in the summer of 2006. The McElroys joined in July 2010.

**MEMORANDUM DECISION AND ORDER - 18**

## CONCLUSION

The Court finds that Plaintiffs have alleged a plausible breach of contract claim and that Defendants' arguments, while potentially meritorious, do not defeat the claim at this stage of the litigation. Defendants have not proven that they are entitled to judgment as a matter of law on the breach of contract cause of action under Rule 12(c).

On the other hand, the Court finds that Defendants have met their burden of establishing that, as currently alleged, the Plaintiffs have not stated plausible causes of actions on counts two and three, for constructive fraud/misrepresentation and violation of the Idaho Consumer Protection Act. However, the Court will allow Defendants leave to amend their complaint as to these two claims. The Court will set a scheduling conference in due course and at that scheduling conference, a deadline date for amendment of pleadings will be set.

## ORDER

**IT IS HEREBY ORDERED that** Defendants' Motion for Judgment on the Pleadings (Dkt. 13) is GRANTED IN PART and DENIED IN PART.

DATED: **September 30, 2013**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 19**