UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT CAYNE and PHYLLIS CAYNE, husband and wife; RONNIE RIVERA, individually; SEAN RIVERA, individually; KEN McELROY and LAURA McELROY, husband and wife; and the same on behalf of themselves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WASHINGTON TRUST BANK, a Washington corporation; and WEST SPRAGUE AVENUE HOLDINGS, LLC, a Washington limited liability company; and JOHN/JANE DOE I-V,<br><br>Defendants. | Case No. 2:12-cv-00584-REB<br><br>**MEMORANDUM DECISION AND ORDER ON DOCKET MOTIONS NOS. 125, 136, 149, 188 AND 192** |

  Currently pending before the Court are Plaintiffs' Motion to Include a Prayer for Relief Seeking Punitive Damages (Dkt. 125), Defendants' Motion in Limine To Exclude Testimony of Proposed Expert Christine Kosydar (Dkt. 136), Plaintiffs' Application for Automatic Exclusion, or to Strike, the Untimely Disclosure of Defendants' Experts (Dkt. 149), Plaintiffs' Motion in Limine No. 7 Seeking Exclusion of Any Evidence or Testimony Concerning Defendants' Proposed Non-Retained Rebuttal Expert Witnesses (Dkt. 188), and Plaintiffs' Motion in Limine No. 9 Seeking the Exclusion of Any Testimony by Peter Stanton (Dkt. 192).[1]  Having carefully considered the record, participated in oral

---

  [1] A decision on both parties' motions for reconsideration (Dkts. 178, 211) will be forthcoming.

**Memorandum Decision and Order - 1**

argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:[2]

## I. MOTION FOR PUNITIVE DAMAGES

### A. Punitive Damages: Legal Standard

Plaintiffs seek to amend their complaint to assert a claim for punitive damages. Plaintiffs' punitive damages claim is governed by Idaho Code § 6-1604, which provides that a Court shall allow amendment to include a prayer for relief seeking punitive damages, if:

> after weighing the evidence presented, the court concludes that, the moving party has established at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages.

Idaho Code 6-1604(2).[3] A trial court's decision as to whether the moving party established such a reasonable likelihood is discretionary and reviewed for abuse of discretion. *See Vendelin v. Costco Wholesale Corp.*, 95 P.3d 34, 41 (Idaho 2004); *see also Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1187 (9th Cir. 2004). As a matter of substantive law, in Idaho punitive damages are not favored and should be awarded only in the most unusual and compelling circumstances, and are to be awarded cautiously and within narrow limits. *Manning v. Twin Falls Clinic & Hosp., Inc.*, 830 P.3d 1185, 1190 (Idaho 1992); *see also Jones v. Panhandle Distribs., Inc.*, 792 P.2d 315 (Idaho 1990).

Importantly, whether a party is allowed to assert a claim for punitive damages is not based upon the type of case or claim. *Todd v. Sullivan Const. LLC*, 191 P.3d 196, 201 (Idaho 2008). "A

---

[2] A more detailed discussion of the factual background and legal context is found in the Court's September 3, 2015, Memorandum Decision and Order (Dkt. 177).

[3] The standard that must be proved at trial in order to *award* punitive damages is that the plaintiff must prove by "clear and convincing evidence" conduct that is oppressive, fraudulent, malicious or outrageous. I.C. § 6-1604(1).

**Memorandum Decision and Order - 2**

prayer for punitive damages is not a stand-alone cause of action, but flows from an underlying cause of action, such as breach of contract or a tort, when the conduct of a party meets the threshold level of being oppressive and outrageous." *Boise Tower Assocs., LLC v. Washington Cap. Joint Master Trust*, 2006 WL 1749656, *12 (D. Idaho 2006).

Conduct justifying punitive damages requires "an intersection of two factors: a bad act and a bad state of mind." *Linscott v. Rainier Nat. Life. Ins. Co.*, 606 P.2d 958, 962 (Idaho 1980). *See also Todd*, 191 P.3d 196, 201 (Idaho 2008); *Myers v. Workmen's Automobile Ins. Co.*, 95 P.3d 977, 985 (Idaho 2004). The defendant must act (1) in a manner that was an extreme deviation from reasonable standards of conduct with an understanding of - or disregard for- its likely consequences, and (2) with an extremely harmful state of mind, described variously as with malice, oppression, fraud, gross negligence, wantonness, deliberately, or willfully. *See Myers v. Workmen's Auto Ins. Co.*, 95 P.3d 977, 983 (Idaho 2004). Idaho law describes five factors of significance in the proof of punitive damages: (1) the presence of expert testimony; (2) whether the unreasonable conduct actually caused harm to the plaintiff; (3) whether there is a special relationship between the parties, as in the insured-insurer relationship; (4) proof of a continuing course of oppressive conduct; and (5) proof of the actor's knowledge of the likely consequences of the conduct. *Cuddy Mountain Concrete Inc. v. Citadel Const Ins.*, 824 P.2d 151, 160-61 (Idaho Ct. App. 1992).

**B. Discussion**

The Court considers Plaintiffs' evidence and arguments in support of their motion to amend to add a prayer for punitive damages in the context dictated by Idaho law: that they show a *reasonable likelihood* of proving facts at trial to support such an award. I.C. § 6-1604(2); *Cf.* I.C.

**Memorandum Decision and Order - 3**

§ 6-1604(1) (at trial, claimant must prove punitive damages by "clear and convincing evidence"). [4]

Plaintiffs focus on five main facts in support of their argument that they are entitled to pursue punitive damages. In Plaintiffs' words, these are: (1) the Bank intentionally entered into a lending agreement where the LLC agreed to repay a $10 million loan although it received none of the loan proceeds and gave the Club's property to the Bank as collateral; (2) the Bank's detailed financial analysis concluded that repayment would necessarily come from the refundable membership deposit proceeds paid by each member to the LLC to join the Club; (3) the Bank knowingly accepted the membership deposit payments exceeding $4.5 million as repayment toward the loan; (4) the Bank took ownership of the Club's property (after the LLC's default) in a "secretive and voluntary" deed in lieu transaction rather than a judicial foreclosure where due process would have protected the members, while knowing the deposits totaled $29.5 million; and (5) the Bank voluntarily chose to take an assignment of the LLC's Membership Agreements and incorporated Membership Plan the LLC entered into with each member in order to maintain the membership base, which would both maximize the resale value of the Club's property and allow the Bank to continue to collect member dues and charges. *See* Plaintiffs' Motion for Leave to Seek Punitive Damages (Dkt. 125) at 5-6.

For the reasons detailed herein, the Court denies Plaintiffs' motion. The Court follows, in

---

[4] Idaho law applies to the punitive damages motion. Idaho Code § 6-1604 is substantive in nature and therefore controlling in this federal diversity case. *See Windsor v. Guarantee Trust Life Ins.*, 684 F. Supp. 630 (D. Idaho 1988); *Hillborn v. Metro. Group Prop. & Cas. Ins.*, 2014 Wl 2506303, *1 (D. Idaho June 3, 2014). Also, as the Court briefly touched upon at the hearing, the Court disagrees with Defendants' characterization that Plaintiff's motion was untimely and must comply with Fed. R. Civ. P. 16(b). Given the unique nature of the Idaho statute on punitive damages and the requirement that a plaintiff must seek leave to amend a complaint to add punitive damages (and is precluded from raising such a claim in its initial pleading) the Court finds it was timely filed.

**Memorandum Decision and Order - 4**

doing so, the Supreme Court's guidance in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003) that "a defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages." Plaintiffs seek to rely upon such independent acts in seeking to add a claim for punitive damages. Much of the alleged "bad conduct" and "bad state of mind" evidence relied upon by Plaintiffs stems from the initial 2004 loan from the Bank to the LLC. For example, Plaintiffs argue that member fees were used to "justify" the 2004 loan, that the loan was repaid from those membership deposit fees, the LLC received none of the loan proceeds, and the Bank's banking practices surrounding the 2004 loan deviated from proper standards. However, the making of the 2004 loan is not the act upon which liability in this case is premised. Liability, if any, stems from a breach of the Membership Agreement. The Supreme Court's holding in *Campbell* made clear the distinction – a "defendant should be punished for conduct that harmed the plaintiff, not for being an unsavory individual or business." *Id*. at 423.

The Court has considered Plaintiffs' motion, and the expert report of Christine Kosydar, against the five factors laid out in *Cuddy Mountain*. Of significance is the fact that, as discussed further below, Ms. Kosydar will not be permitted to testify on all the matters contained in her report. Her opinions on, and criticisms of, the Bank's practices with respect to the 2004 loan, including loan repayment and where the loan proceeds were used, will not be allowed at trial. The nature of that particular testimony is of minimal significance in the context of a motion to add a punitive damages claim. The testimony which the Court will permit as to the implied assumption/breach of contract claim is more explanatory than inculpatory. Hence, this factor does not support a punitive damages claim.

The holding in *Campbell*, discussed above, is implicated by the second factor – that is, the

**Memorandum Decision and Order - 5**

question of whether the allegedly unreasonable conduct actually harmed Plaintiffs.  Plaintiffs argue that the 2004 "sham loan" was where the bad acts and bad state of mind began, culminating with the breach of the membership agreement.  The Court is not persuaded.  Plaintiffs' remaining claim is a breach of contract claim, based upon a theory of implied assumption.  The relevant conduct to that claim is the conduct immediately contemporaneous to the execution of the Deed in Lieu and its related agreements, or a part of the operation of the Club in the months which followed and the subsequent closing of the Club.  These events occurred in 2011.  The conduct related to the beginning of the loan relationship in 2004 and the following loans is too attenuated to support a claim for punitive damages tied to the Defendants' conduct in regard to the alleged breach of the Membership Agreement.

Plaintiffs further argue that they were harmed by the Bank's decision to pursue the DIL instead of other remedies, and that the Bank engaged in a "devious thought process for extricating themselves from the Sham Club Loan while taking advantage of the gross disparity in bargaining power between [the Bank] and the Club's members."  *See* Plaintiff's Motion (Dkt. 125) at 12.  While the DIL transaction may have preceded the harm alleged to have been suffered by Plaintiffs, they fail to show that the DIL was executed with a harmful state of mind *towards* Plaintiffs.  The DIL Agreement contains specific reference to the Bank's responsibility to consider the best interests of the members.  Plaintiffs, obviously, contend that the ultimate denouement of these events fell far short of meeting their best interests, but this evidence further diminishes Plaintiffs' argument that the Bank's state of mind when executing the DIL was harmful towards Plaintiffs.

As to the third factor, there is no special, or fiduciary-type, relationship between Plaintiffs and the Bank.  Idaho does not recognize a special relationship between a bank, as a lender, and its

debtor/borrower.  *See Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.* 824 P.2d 841, 852 (Idaho 1991).  If the original borrower (the LLC) has no special relationship with the Bank, there is no space for Plaintiffs to argue that they had a special relationship with the Bank simply because the Bank is alleged to have taken on the LLC's duties toward the Plaintiffs.  The Plaintiffs' relationship in that setting can only be a relationship they inherited as a result of the Bank's alleged assumption of the duties contained in the Membership Agreement.  Further, Plaintiffs' argument that their purported "member" (the golfer) relationship with the LLC (the golf club) – made more significant in the Plaintiffs' view by the fact of the membership deposits – was such a special relationship has even less merit.  The size of the deposits were unarguably more a function of the characteristics of the development and the people involved – a luxury, exclusive, "world-class" golf resort touted in part by its "ranking" in a national golf industry magazine, with "membership" limited for obvious reasons only to those people who could afford to buy into the considerable expense of becoming homeowners and golf club members in the development.  Those facts fall short of creating a special relationship for purposes of punitive damages.

Looking at the fourth factor, there is little evidence to suggest ongoing oppressive conduct aimed at Plaintiffs by the Bank.  Once the Bank took over the Club after the Deed in Lieu of Foreclosure, it kept the Club in operation through the end of the golfing season.  Regardless of what ultimately transpired with the sale of the Club and the alleged termination of the Plaintiffs' rights as members of the Club, during the time period the Club remained open the Plaintiffs were benefitted.  And, as previously described, the record offers sparse support for a claim of *ongoing* oppressive conduct aimed at Plaintiffs that is needed to demonstrate either a bad act, or bad state of mind, standing alone, much less in tandem.

**Memorandum Decision and Order - 7**

The last inquiry under *Cuddy Mountain* pertains to whether the Bank had knowledge of the likely consequence of its conduct.  At the time the DIL was executed, the evidence and its related inferences can just as persuasively support a conclusion that to the extent the Bank was paying attention to such things at all, the Bank believed it would sell the Club with the memberships intact.  That assessment is entirely consistent with the general state of the evidence that the Bank was seeking to keep the Club intact as an operational, exclusive, private golf club resort, because that asset was more valuable than a shuttered golf course.  The Court agrees with Plaintiffs that it is inescapable that the Bank must have been aware of the consequences of its actions pertaining to the Plaintiffs when the Club was sold and memberships were terminated; however, even leaving aside for the moment the evidence that the Bank thought it had left any such potential liabilities at the door when they executed the DIL, that particular, arguably "bad," fact of terminating the memberships is not sufficient to allow amendment for a claim of punitive damages in light of the other factors.

Accordingly, the Court is not persuaded that Plaintiffs have shown a reasonable likelihood of proving facts at trial of the requisite bad act *and* bad state of mind to support adding a punitive damages claim under Idaho law.  The circumstantial evidence alleged to support a purported bad state of mind surrounding the breach of the Membership Agreement travels barely beyond the breach itself.  Indeed, the fact of the breach occurred as a result of events transpiring at the 11th hour.  Significantly, "a breach of contract by itself is not sufficient to warrant an award of punitive damages."  *Gen. Auto Parts Co. v. Genuine Parts Co.*, 979 P.2d 1207, 1211 (Idaho 1999).  And, even in cases where there is evidence that a contract was intentionally breached, a claim for punitive damages requires evidence of malice or other bad intent on the part of the breaching party.  *See id*;

**Memorandum Decision and Order - 8**

*see also Todd v. Sullivan Const. LLC*, 191 P.3d at 201.  In the absence of bad intent, allowing Plaintiffs to pursue a claim for punitive damages is improper.  Plaintiffs' motion is denied.[5]

## II.  DEFENDANTS' MOTION IN LIMINE TO EXCLUDE TESTIMONY OF PROPOSED EXPERT CHRISTINE KOSYDAR

Defendants move to strike the report of Plaintiffs' expert, Christine Kosydar, on several grounds.  First, they contend that the conclusions in her expert report regarding the Bank's compliance with standard banking practices (in 2004, then in 2008, 2009, and 2010) and whether the Bank assumed the refund liability under the DIL Agreement are legal conclusions, irrelevant, and prejudicial.  Fed. R. Evid. 403, 702.  Second, they argue that Ms. Kosydar's opinions on whether the Bank is liable under various lender-liability theories, including fraud, involve claims no longer at issue in this case, are legal conclusions, and lead to confusion and prejudice.

The Court agrees with Defendants that the bulk of Ms. Kosydar's report contains legal conclusions that are an improper subject for expert testimony.  Her expert report also focuses on the 2004 loan and the financial circumstances of Mr. Chesrown and the LLC leading up to the 2004 loan and after it, including supplemental loans in 2008, 2009, and 2010.  The Court will prohibit Ms. Kosydar from testifying about matters contained in her report that discuss: the history of the 2004 loan, the 2004 loan itself, the supplemental loans in 2008, 2009, and 2010, how any of these loans were repaid, and whether such loans and related circumstances were in accordance with customary banking practices (*see, e.g.*, Kosydar Expert Report (Dkt. 128-5) at 2-22).  The Court finds that

---

[5] Following oral argument, Plaintiffs submitted a notice of supplemental authority (Dkt. 224) without seeking leave from the Court to file such authority.  Defendants have moved to strike this filing.  The Court did not consider this supplemental authority in reaching its decision as it was filed after the hearing, without leave from the Court.  Defendants' motion to strike (Dkt. 231) is granted.

**Memorandum Decision and Order - 9**

testimony on these topics is irrelevant to the claim at issue, contain legal conclusions, and also would likely confuse the jury on the ultimate issue to be determined.

Likewise, the Court will also prohibit Ms. Kosydar from testifying on the legal ramifications of the DIL, specifically the assumption of the deposit liability, the DIL itself, how the Club was operated post-DIL, the creation of West Sprague, and conclusions regarding the Bank's liability, and punitive damages.  (*See, e.g.,* Kosydar Expert Report pp. 25-36.)  Again, the Court finds these are legal conclusions, irrelevant, and likely to prejudice the jury.

The Court *will* allow Ms. Kosydar to testify as an explanatory witness on the following: the options that the Bank, or a bank in a similar situation, would have to recover on its loan, (*i.e.,* Kosydar Report, pp. 23-24), typical banking practices in similar situations leading up to the DIL and the general background of the case necessary to explain the situation before the Bank at the time of the DIL.  The Bank objected to such testimony on the premise that the Bank's employees would be available to explain such matters, but that is not a basis to preclude Plaintiffs from offering their own witness to speak to such matters.

### III.  PLAINTIFFS' APPLICATION FOR AUTOMATIC EXCLUSION, OR TO STRIKE, THE UNTIMELY DISCLOSURE OF DEFENDANTS' EXPERTS

Plaintiffs have moved to strike what they contend were untimely disclosures of expert testimony from the following individuals: (1) Neal Gluckman, CPA; (2) Dean Oberst; (3) Jack Heath; (4) Mark Perko; (5) Dean Emmanuels; and (6) Julie Shiflett.  (Dkt. 149).  The deadline for Defendants' disclosure of experts was February 16, 2015.  The rebuttal expert report deadline was March 16, 2015.  (Dkt. 78).  Defendants disclosed these expert witnesses on March 16, 2015.  Plaintiffs argue that these experts should have been disclosed by the February 16, 2015, deadline and because they were not, they should be stricken, or only allowed to testify as lay witnesses (for

**Memorandum Decision and Order - 10**

Oberst, Heath, Perko, Emmanuels, and Shiflett).

The case management form provided by the Court, and ultimately submitted by the parties for the Court's use in issuing a scheduling order, states: "Plaintiff to identify and disclose rebuttal expert reports, if any, by . . ." (*see* Dkt. 47), the Case Management Order entered by the Court provides: "Rebuttal expert witness disclosures shall be provided on or before . . . ."  The Order is intended to use the stipulated dates of the parties for such matters, but it does not specifically limit the rebuttal report deadline to plaintiffs. (*See* Dkt. 78).  Defendants seize upon this discrepancy in arguing that their disclosures were not untimely.

As stated by the Court during the hearing, this is the first time that a party has made such an argument in regard to the scheduling order – that is, to argue that the defendant has two expert witness deadlines.  There is, perhaps, an ambiguity.  In such a context, the better practice would be to ask for direction from the Court as to the meaning of the particular deadline.  However, the Court will accept for these purposes the representation of defense counsel that their reading of the scheduling order permitted them to identify experts by the later date and that they believed they were complying with the deadlines in submitting their expert disclosures and expert report on March 16, 2015.  The Court will deny Plaintiffs' motion to strike due to untimeliness.

### IV.  PLAINTIFFS' MOTION IN LIMINE NO. 7 SEEKING EXCLUSION OF ANY EVIDENCE OR TESTIMONY CONCERNING DEFENDANTS' PROPOSED NON-RETAINED REBUTTAL EXPERT WITNESSES

In Plaintiffs' Motion in Limine No. 7, Plaintiffs seek to exclude the non-retained experts (Oberst, Heath, Perko, Emmanuels, and Shiflett) because the proffered disclosure is insufficiently detailed and fails to fairly apprise Plaintiffs of the scope of the intended expert testimony.  *See* Fed. R. Civ. P. 26(a)(2)(C) (disclosure must include "a summary of the facts and opinion to which the

**Memorandum Decision and Order - 11**

witness is expected to testify"). Plaintiffs argue that instead of identifying specific facts and/or opinions that these experts would testify to, Defendants submitted short statements describing the anticipated subject matter of the expert opinions and incorporated their deposition testimony by reference.

The Court will not exclude the testimony of these witnesses as experts. However, the scope of their opinion testimony shall be limited to the opinions expressed in their depositions, and solely to those statements. Defendants shall identify and provide to Plaintiffs the portions of the deposition testimony they intend to introduce at trial. Plaintiffs' motion is granted in part and denied in part.

### V. PLAINTIFFS' MOTION IN LIMINE NO. 9 SEEKING THE EXCLUSION OF ANY TESTIMONY BY PETER STANTON

Plaintiffs also move to exclude the testimony of Peter Stanton (the Bank's Chairman), because he was not disclosed as a potential trial witness in any disclosures until Defendants filed their Pre-Trial Witness List (Dkt. 169) on May 4, 2015. Plaintiffs contend that the Defendants' delay in disclosing Stanton is a violation of Fed. R. Civ. P. 26(a) and they have been prejudiced because they did not have the opportunity to depose him prior to trial.

In response to Plaintiffs' motion, Defendants contend that they only need to call Stanton if the Court allows Plaintiffs to seek punitive damages, and the reason for their late disclosure was because they did not realize a potential need for his testimony until the Plaintiffs pursued their motion to add a punitive damages claim.

First, the Court will accept the plausibility of counsel for Defendants not realizing the need for Stanton's testimony until the issue of the punitive damage claim was front and center – Plaintiffs' motion relies in part upon statements of business practices and principles adopted by the Bank, and it is sensible that Defendants would want Stanton to speak to such matters from the

**Memorandum Decision and Order - 12**

Bank's perspective.  Plaintiffs' motion for punitive damages was not filed until February 23, 2015, (*see* Dkt. 125), and the Court did not take up the motion until much more recently.  Hence, the Court will deny the motion to exclude Stanton's testimony as having been untimely disclosed.

However, the Court also has ruled upon the limited scope of testimony that Ms. Kosydar may give at trial.  Accordingly, it is unlikely Stanton's testimony would be necessary, given Defendants' representation that his testimony is only needed to rebut the particular evidence concerning the Bank's statements of business practices and principles.  One can only follow the other.  Accordingly, Plaintiffs' motion is granted in part and denied in part.

## ORDER

**IT IS THEREFORE ORDERED:**

1) Plaintiffs' Motion to Include a Prayer for Relief Seeking Punitive Damages (Dkt. 125) is DENIED;

2) Defendants' Motion in Limine to Exclude Testimony of Proposed Expert Christine Kosydar (Dkt. 136) is GRANTED IN PART and DENIED IN PART**;**

3) Plaintiffs' Application for Automatic Exclusion, or to Strike, the Untimely Disclosure of Defendants' Experts (Dkt. 149) is DENIED;

4) Plaintiffs' Motion in Limine No. 7 Seeking Exclusion of Any Evidence or Testimony Concerning Defendants' Proposed Non-Retained Rebuttal Expert Witnesses (Dkt. 188) is GRANTED IN PART and DENIED IN PART;

5) Plaintiffs' Motion in Limine No. 9 Seeking the Exclusion of Any Testimony by Peter Stanton (Dkt. 192) is GRANTED IN PART and DENIED IN PART; and

6) Defendants' Motion to Strike (Dkt. 231) is GRANTED.



DATED:  **November 13, 2015**

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

**Memorandum Decision and Order - 14**