UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT CAYNE and PHYLLIS CAYNE, husband and wife; RONNIE RIVERA, individually; SEAN RIVERA, individually; KEN McELROY and LAURA McELROY, husband and wife; and the same on behalf of themselves and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>vs.<br><br>WASHINGTON TRUST BANK, a Washington corporation; and WEST SPRAGUE AVENUE HOLDINGS, LLC, a Washington limited liability company; and JOHN/JANE DOE I-V,<br><br>     Defendants. | Case No. 2:12-cv-00584-REB<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION FOR RECONSIDERATION (DKT. 178), PLAINTIFFS' MOTION FOR RECONSIDERATION (DKT. 211)** |

   Currently pending before the Court are Defendants Washington Trust Bank and West Sprague Avenue Holdings, LLC's Motion for Reconsideration (Dkt. 178) and Plaintiffs' Motion for Reconsideration (Dkt. 211). Both parties seek reconsideration of the Court's September 3, 2015 Memorandum Decision and Order ("the Order") (Dkt. 177) on the parties' cross-motions for summary judgment. Having carefully considered the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order[1]:

---

  [1] A more thorough discussion of the facts and legal context of the case is found in the Court's Memorandum Decision and Order dated September 3, 2015 (Dkt. 177).

**Memorandum Decision and Order - 1**

## I.      STANDARD

Federal Rule of Civil Procedure 59(e) requires that a "motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  Reconsideration of a court's prior ruling under Fed. R. Civ. P. 59(e) is appropriate to (1) correct manifest errors of law or fact upon which the judgment rests; (2) present newly discovered evidence or previously unavailable evidence; (3) prevent manifest injustice; or (4) correct the decision due to an intervening change in controlling law.  *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011).  If the motion to reconsider does not fall within one of these categories, it must be denied.

Motions to reconsider seek an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources."  *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). Rule 59 does not provide litigants with a "second bite at the apple."  *Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001).  Where "Rule 59(e) motions are merely being pursued 'as a means to reargue matters already argued and disposed of . . . such motions are not properly classifiable as being motions under Rule 59(e).'"  *American Independence Mines & Minerals Co. v. USDA*, 733 F.Supp.2d 1241, 1259-61 (D. Idaho. 2010).  "A motion for reconsideration may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation."  *Marlyn Nutrachemicals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (emphasis in original).  The high bar required to prevail on a motion for reconsideration is both practical and substantive, because of the importance of  "concerns for preserving dwindling resources and promoting judicial efficiency."  *Costello v. United States Gov't*, 765 F. Supp. 1003, 1009 (C.D. Cal. 1991).

## II.     DEFENDANTS' MOTION FOR RECONSIDERATION

Defendants contend that reconsideration is warranted because: (1) FDIC regulations "expressly permit or require" the Bank to do the things it did; (2) UCC Article 9 bars Plaintiffs' claims against secured creditors; (3) the recently decided *Johnson v. FHLMC* case controls the outcome of this case;

**Memorandum Decision and Order - 2**

and (4) the statute of frauds bars Plaintiffs' claim.  Defendants also contend the Court made factual errors which should be revised in their favor, and finally ask that the case be certified to the Ninth Circuit under 28 U.S.C. § 1292 for immediate appeal, or alternatively that certain questions of law be certified to the Washington Supreme Court or the Idaho Supreme Court to obtain a state court ruling on purported conflicts between the UCC and common law, as well as disagreements over the elements and burden of proof.  *See* Defs.' Mem., Dkt. 178-1, pp. 8-9.

At the outset, the Court finds that Defendants' motion for reconsideration contravenes Rule 59(e) because Defendants seek to reargue matters already decided or argue matters that were not raised earlier and could have been.  Using a motion for reconsideration for these purposes only serves to deplete judicial resources that can be better served on other cases and matters. The Court could stop here, but will nonetheless discuss Defendants' motion for reconsideration on its merits, as Defendants also contend that the Court has committed manifest errors of law or fact upon which the judgment rests.

## A.    Purported Conflict with Federal Banking Law[2]

Defendants' argument regarding regulations implemented by the Federal Deposit Insurance Corporation ("FDIC") and the Office of the Comptroller of the Currency ("OCC") appears two-fold. First, that the area of banking is strictly regulated by federal law, thus preempting any state law liability (such as breach of contract liability).[3]  Second, that FDIC regulations expressly allow a bank to take possession of real estate "in satisfaction of debts previously contracted" and to "expend such funds as are needed to enable such . . . to recover its total investment," and that Defendants were only complying with these regulations in the actions they took relating to the Deed in Lieu of Foreclosure Agreement

---

[2]  This is a new argument, as Defendants made no reference to either the FDIC or OCC in the extensive briefing upon the cross-motions for summary judgment.

[3]  Although Defendants do not explicitly argue "federal preemption," it is what their arguments of "conflict with federal law" and "conduct strictly regulated by federal law" suggest.

**Memorandum Decision and Order - 3**

("DIL").  *See* 12 U.S.C. § 29.[4]  Defendants argues that the Court's "denial of summary judgment is manifest error of law because it puts Defendants in a position whereby to avoid liability under state law they must disregard federal law."  Defs.' Mem., Dkt. 178-1, p. 13.

The National Bank Act allows for a "national banking association" to "purchase, hold, and convey real estate" for certain purposes, including: "in satisfaction of debts previously contracted in the course of its dealings."  12 U.S.C. § 29.  However, this federal statute does not purport to preempt state law (the traditional source of real property law), and certainly cannot provide a basis to hold that a "national banking association" cannot be found liable on a state law breach of contract cause of action.  Federal preemption occurs when: (1) Congress exacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field.  *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010).

State law is preempted when it "frustrates the purpose of national legislation, or impairs the efficiencies of the [ ] agencies of the federal government to discharge the duties for the performance of which they were created." *McClellan v. Chipman*, 164 U.S. 347, 357 (1896).  Plaintiffs' breach of contract claim does not conflict with federal law nor does federal banking law occupy the entire field to such an extent that Congress left no room for application of state law to disputes such as those at play in this case. "[S]tates retain some power to regulate national banks in areas such as contracts, debt collection, acquisition and transfer of property, and taxation, zoning, criminal, and tort law." *Bank of Am. v. City & Cty. of San Francisco*, 309 F.3d 551, 558 (9th Cir. 2002); *see also Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 531-32 (2009).  When the National Bank Act has been held to preempt state law, it has been because the state law interfered with a national bank's banking-related functions or operations. *See Bank of Am. v. City & Cty. of San Francisco*, 309 F.3d 551, 562 (9th Cir.

---

[4]  This statute is part of a framework of federal banking laws known collectively as the "National Bank Act."

**Memorandum Decision and Order - 4**

2002) (state regulation of bank deposit fees); *Rose v. Chase Bank U.S.A., N.A.*, 513 F.3d 1032, 1036–37 (9th Cir. 2008) (state regulation of disclosures about commercial instruments); *Wells Fargo Bank, N.A., v. Boutris*, 419 F.3d 949 (9th Cir. 2005) (state regulation of auditing interest transactions); *see also Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 12–14 (2007) (state regulation of mortgage activities). There is no preemption of Plaintiffs' claim here.

Defendants also seek to rely upon cases dealing with disputes implicating provisions of the National Bank Act, but such cases are inapposite to this case, in that this case does not involve causes of action which may only be enforced by the federal banking authorities. *See* Defs.' Mem., Dkt.178-1, p. 11 (citing to *E. Cascades Inc. v. FDIC*, 2011 WL 647704, *4 (W.D. Wash. 2011)). That distinction is self-evident, and the argument that only the federal government could pursue a claim for relief of the nature raised in this case is unavailing. Plaintiffs do not sue under the National Bank Act; rather, they have brought a breach of contract claim.

Defendants' arguments that the FDIC and OCC regulations are binding and require reconsideration of the Court's Order are similarly infirm, in that they presume a different constellation of facts and claims than are at play in this lawsuit. Further, the argument Defendants make in that regard is drawn upon an incomplete description of the pertinent regulations, and the full context of the regulations does not support the position taken by Defendants.

**B.     Uniform Commercial Code Article 9**

Next, Defendants contend that provisions of Article 9 of the Uniform Commercial Code[5] apply to the facts of this case, and control the result of the issues at play in the summary judgment motions.

Defendants did discuss certain provisions of Article 9 in the cross-motions for summary judgment; however, their motion for reconsideration raises new arguments, drawing upon provisions

---

[5] Defendants reference the Revised Code of Washington for its citations to UCC Article 9. Whether it is the Washington or Idaho versions of Article 9 that should be applied is not an essential matter to be determined at this time as the relevant UCC provisions for Idaho and Washington are the same. *See* Defs.' Mem., Dkt. 89-1, p. 10 n.7.

**Memorandum Decision and Order - 5**

of Article 9 that were not raised in the summary judgment record.[6]

To begin, Defendants reference Article 2.1(a) of the DIL Agreement to contend that their actions constituted a strict foreclosure of personal property under UCC Article 9-620 (RCW 62A.9A-620). This section of the DIL simply recites the secured creditor's rights in the *underlying* Security Agreements executed in relation to prior loans.  Article 2.1 states, in part:

> Pursuant to [the various security agreements], if an Event of Default occurs, WTB: (a) Shall have all the rights of a secured party under the Uniform Commercial Code (Section 9-601), as may be amended from time to time, and shall have and may exercise any or all other rights and remedies it may have available in law, in equity, or otherwise.

Article 2.1 then lists five other possibilities upon default on the loan agreements (*e.g.*, "may appoint a receiver").  But Article 2.1's recitation of the rights available to the Bank under the security agreements is inapposite to the present dispute because of the decisions ultimately made by the Bank – the record reflects that the Bank chose a contractual workout, to avoid foreclosure proceedings, and to resolve in a private agreement by deeming the debt obligation of the Club (and Chesrown's Guaranty) fully satisfied in exchange for the Bank's taking possession and ownership of the Club's assets, and with the Bank therefore not retaining any further security interest and foregoing any deficiency claim or other right of recovery.

Defendants also claim manifest error by the Court in their argument that Plaintiffs are "account debtors" under Article 9, and Washington law limits any claim they might have here to a set-off.

Defendants claim that Plaintiffs are account debtors because "the Membership Agreements

---

[6]  Theses include: RCW 62A.9A-404(b), -102(61), -102(12)(b), -102(72)(D), -102(12), -102(3), -101, -620, -404(b) Official Cmt. 2, -402 Official Cmt. 2 and RCW 62A.1-103 Official Cmt. 2, -201(35).    62A.9A-404(b) is only cited in Defendants' Motion for Summary Judgment in a parenthetical discussing the case of *Lydig Constr., Inc. v. Rainier Nat'l Bank*, 697 P.2d 1019 (Wash. App. 1985).  See Defs.' Mem., Dkt. 89-1, p. 11.  Defendants did not argue that this particular Article 9 provision controlled the result on summary judgment.

**Memorandum Decision and Order - 6**

require monthly payments."  See Defs.' Mem., Dkt. 178-1, p. 9 n.7.  (Defendants do not specifically identify the specific language upon which they rely.)  Defendants then contend that based upon RCW 62A.9A-404(b), which provides that the "claim of an account debtor against an assignor may be asserted against an assignee under subsection (a) only to reduce the amount the account debtor owes" Plaintiffs, as "account debtors," are to limited to a set off only.[7]

An account debtor under Article 9 is "a person obligated on an account, chattel paper, or general intangible."  RCW 62A.9A-102(a)(3).  But this lawsuit does not involve a claim by Plaintiffs for return of monthly due payments. The Plaintiffs are seeking a return of monies previously paid, in the form of a deposit.  They are not persons "obligated on an account, chattel paper, or general intangible." Plaintiffs have already paid to the Club the amounts which are the subject of the claims for refund of the membership deposits.  For purposes of this lawsuit, Plaintiffs are not account debtors.[8]

Defendants also contend that the DIL and Bill of Sale constituted a "sale" of a "payment intangible" governed by Article, such as to wrap them in an Article 9 cocoon, protected from the breach of contract claim remaining in this lawsuit.  *See* Defs' Mem., Dkt. 178-1, p. 15.  Defendants position,

---

[7]  Defendants' briefing on this subject is difficult to follow, and their argument appears to trip over itself in several instances in its discussion of UCC Section 9-404(b) by failing to distinguish between, or conflating, account debtors and account creditors.  *E.g.*, Defs.' Mem., Dkt. 178-1, p. 9.

[8]  As mentioned, Defendants do not specify the original source of their argument that Plaintiffs are account debtors, but their reference to "monthly payments" can only refer to the monthly dues paid by members of the Club.  The Membership Plan deals with the monthly dues and the membership deposits as two separate subjects.  Compare description of "DUES AND CHARGES" on pages 12-13 of the document with the description of "MEMBERSHIP DEPOSIT" that appears on pages 7-8.  Membership Plan, Dkt. 92-1, pp. 18-19, 13-14.  The Membership Plan also states in regard to repayment of the Membership Deposits that "the Club will deduct from any amount to be repaid to the member, any amount which the member owes the Club."  *Id.*, p. 14.

**Memorandum Decision and Order - 7**

however, runs counter to its own documents.  The DIL Agreement, drafted by the Bank, describes what transpired thusly:

> "*Following considerations of other alternatives*, WTB and The Club *believe that transfer of the Property* [defined as both Real and Personal Property in the DIL] *in lieu of foreclosure is necessary to allow for continued operation* of The Club as set forth in Section 6.3" DIL Recital G.

(Emphasis supplied.)

The argument that the Bank had chosen a strict foreclosure remedy under Article 9 is directly contradicted in the DIL Agreement, which contains specific historical context that the Bank considered "other alternatives" (which, at a minimum, on this record carries a material inference that once such "other alternative" was foreclosure) and instead chose to obtain transfer of the real and personal property by a different means, "*in lieu of foreclosure.*" Repeatedly in the DIL and the Bill of Sale, the parties agreed that the Personal Property was being granted, bargained, sold, conveyed, assigned, and transferred to the Bank, and that transfer was made "*absolutely and not as security*" and *in exchange for* a "full and unconditional release of all debts, liabilities, obligations, costs, and charges owed by the Club to WTB . . ."  DIL Recital I, DIL Section 6.1; Bill of Sale (Emphasis supplied).

Defendants make a further argument on these lines, in criticizing an excerpted portion of the Court's decision on summary judgment in which the Court states that its "determination [whether] Article 9 [applies] makes no difference because the 'analysis' is the same under the UCC and common law." Defs.' Mem. Dkt. 178-1, p. 16.  The context of the statement was referencing the similarities between successor liability claims and a claim alleging liability of an assignee on an executory contract. Order, Dkt. 177, pp. 24-25.  Significantly, the statement criticized by Defendants  mirrors Defendants' own characterization of the subject in their response to Plaintiffs' motion for summary judgment.  "It does not matter whether the Court analyzes this case under assignee or successor liability principles,"

**Memorandum Decision and Order - 8**

Defendants said in that filing, because "both bodies of law invoke the ***same*** broad transferee liability principles, and both share the same starting presumption: the transferee/assignee/successor does ***not*** assume liability absent proof of assumption (express or implied)."  Defs.' Resp., Dkt. 119, p. 11 (emphasis in original).  The Court is not persuaded that Defendants' Article 9 arguments should lead to a different result than the Court has previously rendered.

      C.    ***Johnson v. FHLMC***

Defendants contend that a recently issued Ninth Circuit decision is "binding precedent" and warrants reconsideration of the Court's summary judgment ruling.  The decision, *Johnson v. FHLMC*, 793 F.3d 1005, (9th Cir. 2015), was issued in the time between the hearing on the motions for summary judgment and the Court's decision on the motions.  Significantly here, Defendants filed a notice of supplemental authority (Dkt.172) referencing the *Johnson* case, and the Court did consider the decision but ultimately determined it did not dictate the result sought by Defendants.

The Court concluded then, and remains satisfied, that the decision in *Johnson* is not in any way an "intervening change in controlling law" which would justify reconsideration.  The pertinent language relied upon by Defendants pertains to a citation in *Lewis* to the decision of *Lewis v. Boehm*, 947 P.2d 1265 (Wash. App. 1997).  The Circuit panel was drawing upon a Washington state decision decided several decades earlier, and the Circuit's decision is neither a statement of new law, nor an "intervening change in controlling law," or anything of the sort.

In sum, the citation to the *Lewis* case in *Johnson* simply touched upon the same principle of Washington law previously argued by Defendants, previously considered by this Court, and previously

**Memorandum Decision and Order - 9**

addressed in the summary judgment decision.  *See* Order, Dkt. 177, p. 28.[9]  *Johnson* does nothing to

change the law of implied assumption.  The case did not address implied assumption or involve an

implied assumption claim.  It did not, directly or indirectly, overrule other cases relied on by the Court

in its decision.

        **D.**       **Statute of Frauds**

Defendants next raise an argument first raised in their Motion for Judgment on the Pleadings

two years ago but, notably, *not* raised in the summary judgment motions.   Defendants contend that

agreements to answer for the debts of another are subject to the statute of frauds and must be in writing.

In ruling upon Defendant's earlier motion, the Court held that the if there had been an assumption of

the membership agreement and related obligations, such would create an assumed obligation upon an

original promised not required to be in writing, and thus fell within an exception to the statute of frauds.

Order, Dkt. 44, p. 15 (*citing* I.C. 9-506(2).  *See*, *Treasure Valley Plumbing & Heating Co. v. Earth

Resources Co.*, 766 P.2d 1254, 1259 (Idaho 1988)).   Defendants now argue they received no

consideration for this "promise" to take on the refund obligation and therefore it cannot fall within the

statute of frauds.

The Court finds no clear error or manifest injustice in its previous order that Plaintiffs' claim

was not barred by the statute of frauds. Nor has there been any intervening change in controlling law

that would warrant reconsideration.

        **E.**       **Factual Clarifications**

Defendants argue that four factual scenarios must be corrected or clarified.

---

[9]  While this Court did not cite *Lewis*, reference was specifically made to a Washington Supreme Court case cited in *Lewis*, *i.e.*, *Hardinger v. Fullerton*, 5 P.2d 987 (Wash. 1934).

**Memorandum Decision and Order - 10**

### 1.    Membership Suspensions

Defendants argue that they were not the ones to suspend any memberships and focus on testimony from Mr. Gorton that stated a membership suspension occurred the day *before* the DIL was signed.  Yet, Defendants did not dispute this fact or raise the issue of the timing of the suspension letter testified to by Mr. Gorton on the cross-motions for summary judgment.  *See* Defs.' Resp. to Pls.' Facts, Dkt. 119-1.  In footnote 15 of their response to Plaintiffs' motion, Defendants stated: "No evidence exists that the Bank directed club management to suspend any members for non-payment, and the Bank never took action against any member under the membership documents' terms."  Defs.' Resp., Dkt. 119, p. 21 n.15.

Defendants' arguments surrounding the timing of the membership suspensions was not raised earlier, and could have been.  To the extent it is a "new" argument, the Court will not alter its Order.  Finding this to be a "disputed" fact on the cross-motions for summary judgment would not alter the Court's rulings.  Nonetheless, the Court will permit Defendants to contest this point at trial, unless persuaded otherwise by Plaintiffs at the time such proof is offered.

### 2.    Accrual Membership Deposit Liabilities

Defendant contend, as they did in their motion for summary judgment, that the deposit liabilities accrued the day membership agreements were signed because every member was guaranteed a deposit refund after 30 years of membership. This issue has been decided for summary judgment purposes and Defendants have not shown clear error or any manifest injustice that warrants the Court's reconsideration of its Order.

### 3.    Chesrown Declaration

The Court finds the Chesrown declaration was properly stricken and will not reconsider its

**Memorandum Decision and Order - 11**

ruling.  The Court followed Ninth Circuit law regarding "sham affidavits" and in the exercise of its

discretion, the Court found Chesrown's declaration fell within the law describing sham affidavits and

applied the remedies available to parties seeking to oppose a sham affidavit.  Defendants have not

shown clear error or any manifest injustice warranting reconsideration of this issue.

### 4.        Roles of the Bank and West Sprague

In the Court's Order, the Court largely did not differentiate between the Bank and its wholly-

owned subsidiary, West Sprague.  But, neither did Defendants.  *See* Defs.' Mem., Dkt. 89-1, p. 7 n.3

(noting that for purposes of the motion, Defendants had no reason to distinguish between the Bank and

West Sprague).  Defendants now argue treating the Bank and West Sprague as "one" at the trial will

prejudice the Bank's defenses.

In the context of the manner in which this case to date has been litigated, and particularly in the

context of the summary judgment briefing and argument, there is no basis to ask the Court to somehow

remodel its prior decision to deal with the after-the-fact concern over segregating the two entities,

particularly when the Defendants did not think it necessary to make their own arguments in other than

a collective manner.  The request fails the standards of Rule 59(e).  Defendants are free to present proof

and argument at trial regarding the status of the two entities and the importance of the same upon

liability and damage issues, as are Plaintiffs, but the Court will not reconsider its Order. The Court's

decision would not change.

## III.     PLAINTIFFS' MOTION FOR RECONSIDERATION

Plaintiffs contend that the Court used an incorrect legal standard for ruling on summary

judgment.  If the correct standard urged by Plaintiffs had been used, they contend summary judgment

should have been granted.

**Memorandum Decision and Order - 12**

In particular, Plaintiffs take issue with the following portion of the Court's discussion of summary judgment standards: "Direct testimony of the non-movant must be believed, however implausible.  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence." Order, Dkt. 177, p. 18  (Citations omitted).      Plaintiffs do not contend that this statement is inconsistent with or inaccurately applies the holdings in *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999) and *McLaughlin v. Liu*, 849 F.2d 1205 (9th Cir. 1988) (the court is not required to adopt unreasonable inferences from circumstantial evidence).  Rather, Plaintiffs contend that the standard is: "If the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would be otherwise necessary to show that there is a genuine issue for trial . . . Summary judgment should be granted if the evidence is 'merely colorable or is not significantly probative.'" Pls.' Mem., Dkt. 212, p. 7.

Plaintiffs contend that a fact-finder could not reasonably find for the Defendants on the summary judgment record, if the "proper" summary judgment standard had been followed.  Plaintiffs then resubmit the same arguments and facts they raised in their motion for summary judgment. *See generally* Pls.' Mem., Dkt. 212, pp. 14-18.  Again, restating arguments previously made is not the purpose of a motion for reconsideration.  The Court will not reevaluate Plaintiffs' arguments.

The Court has looked at Plaintiffs' argument regarding the summary judgment standard. Plaintiffs' main contention is that *Leslie* does not use the phrase "however implausible."  The Court did not use that language as a quotation from *Leslie*, and the Ninth Circuit in *Leslie* draws upon the holding in *McLaughlin*.   The *McLaughlin* court reversed a district court's summary judgment in favor of the plaintiff "where the [district] court disregarded the defendant's sworn declaration and sworn answers to interrogatories as 'implausible.'"  *Leslie*, 198 F.3d at 1158.

**Memorandum Decision and Order - 13**

As importantly, Plaintiffs do not identify direct testimony that the Court improperly considered, or if improperly considered, how "correcting" this error would change the outcome of the Order. Instead, Plaintiffs seek to reargue many of the issues and facts already considered by the Court. Even under the approach to the record that Plaintiffs would urge, there would still remain genuine issues of material fact. Accordingly, their motion is denied.

## IV.    CERTIFICATION TO THE NINTH CIRCUIT OR STATE SUPREME COURTS

Plaintiffs filed this action in Idaho state court on October 31, 2012, more than three years ago. (*See* Dkt. 1.) Defendants removed the case to federal court on November 27, 2012 and shortly thereafter filed a motion for judgment on the pleadings, on January 11, 2013. (Dkt. 13.) The Court held a hearing on May 13, 2013, and issued an order denying the motion on September 30, 2013. (Dkt. 44.) Also early on, the parties filed cross-motions for partial summary judgment (*see* Dkts. 20, 30) that were later withdrawn (*see* Dkts. 38, 39). Following the decision on the motion for judgment on the pleadings, new counsel for Defendants appeared (Dkt. 46) and the Court issued a Case Management Order on November 13, 2013 (Dkt. 53). This set the class discovery deadline for January 31, 2014, and the remaining discovery deadline for August 29, 2014. The dispositive motion deadline was set for June 23, 2014. (Dkt. 53.) The parties reached a stipulation on class certification and an order approving the stipulation was entered on December 11, 2014. (Dkt. 57.) Two months later, the parties stipulated to extend all deadlines by four months. (*See* Dkt. 58.) This was approved by the Court. (Dkt. 60.)[10] On June 5, 2014, Plaintiff sought to revise the case

_____

[10]   In this instance, the request concerned a personal circumstance of one of the counsel which entirely justified such an extension of the deadlines. Later on in the case, the Court adjusted the trial setting to a later date to take into account personal circumstances of opposing counsel, which also entirely justified such a request.

**Memorandum Decision and Order - 14**

management order in order to amend the complaint and allege approximately 10 more causes of action.  (*See* Dkt. 71.)  The Court denied this motion but approved a stipulation of the parties (dkt. 77) extending the dispositive motion deadline by approximately three months.  (Dkt. 78.)  The parties filed cross-motions for summary judgment in January, 2015.  (*See* Dkts. 89, 99.)  The Court heard oral argument on May 5, 2015, and issued its decision on September 1, 2015.  (Dkt. 171, 174.)  Following entry of the Court's order, both parties filed lengthy motions for reconsideration (Dkts. 177, 211), which in part led to a continuance of trial date to its current setting, to begin January 11, 2016.  (Dkt. 185).  In addition to seeking reconsideration, Defendants also sought an interlocutory appeal to the Ninth Circuit and certification to the Washington and Idaho Supreme Courts for resolution on matters of state law.

Hence, certification to any court, whether it be to the Circuit or to a state supreme court, would add considerable delay to a case already pending for many years.

## A.    CERTIFICATION TO THE NINTH CIRCUIT

Defendants seek, in the alternative to reconsideration, that the Court certify an order for interlocutory appeal to the Ninth Circuit.  28 U.S.C. § 1292(b) provides that "when a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for differences of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation[,]" a court of appeals would have jurisdiction of such an appeal.

Defendants argue an interlocutory appeal is appropriate because this Court's Order conflicts with Ninth Circuit decisions and there is also a direct conflict between federal guidance, statutes, and regulations governing what banks can, cannot, and must do with collateral.

**Memorandum Decision and Order - 15**

Certification is a narrow exception to be applied sparingly and in exceptional circumstances. *In re Cement Antitrust Litig.*, 673 F.2d 1020 (9th Cir. 1982).  The Ninth Circuit cases described by Defendants as conflicting with the Court's summary judgment decision include *Johnson*, which the Court has already addressed and does not warrant an interlocutory appeal.  The other two are *United States v. Handy & Harman*, 750 F.2d 777 (9th Cir. 1984), and *Stoumbos v. Kilimnik*, 988 F.2d 949 (9th Cir. 1993).  Only *Stoumbos* was cited by Defendants in the summary judgment briefing for the holding that "Washington law recognizes other forms of 'transfers' of assets for successor liability." *Id*. at 961.   *Stoumbos* was a case involving a Chapter 7 bankruptcy and is not in direct conflict with the Court's Order.  Moreover, the court in that case  recognized that the transfer of assets involved foreclosure of a security interest and that fact, the foreclosure, would not insulate the successor from liability.  *Id*. at 962.  The other case, *Handy & Harman*, involves Article 9 and for the reasons previously set out in regard to Article 9 issues, does not justify certification.

Defendants' other argument, that there is a conflict between federal statutes and regulations, apparently refers to the National Bank Act and FDIC and OCC regulations, has already been addressed by the Court in this decision.  There is no conflict and the Court will not certify an interlocutory appeal to the Ninth Circuit on that topic.  Defendants have not shown there are exceptional circumstances that satisfy 28 U.S.C. § 1292(b).  Their request is denied.

**B.   CERTIFICATION TO THE STATE SUPREME COURTS**

Defendants contend this case should also be certified to both the Washington and Idaho Supreme Courts for clarification of certain state laws.

**1.     Washington**

Defendants argue that this case should be certified to the Washington Supreme Court

**Memorandum Decision and Order - 16**

pursuant to RCW 2.60.020, which permits a request for certification from a federal court to the Washington Supreme Court when the federal court determines that "it is necessary to ascertain the local law [of Washington] in order to dispose of [the federal case] and the local law has not been clearly determined...."  Defendants contend certification is called for here to determine the "interrelationship between the amended UCC and Washington common law as to implied assumption."  Defs' Mem., Dkt.178-1, p. 26.

In general, certification "rests in the sound discretion of the federal court."  *Lehman Brothers v. Schein*, 416 U.S. 386, 391 (1974).  Mere difficulty in ascertaining and applying the law is not a sufficient reason to certify a question to a state supreme court.  Additionally, certification is not obligatory, even when the law is undetermined.  *See Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1009 (9th Cir. 2009).  The Court is not persuaded that the local law has not been clearly determined, and that even if Defendants might prefer such a certification because they are not in agreement with the Court's application of the law, such a course is not justified.   Further, Defendants did not seek certification until this case had been pending for nearly three years, after filing multiple dispositive motions, and only a few months before trial.  The Court declines Defendants' motion for certification.

### 2.     Idaho

Defendants also seek certification to the Idaho Supreme Court to determine the appropriate elements and burden of proof for implied assumption of liability.  The Court will defer ruling on this matter at this time.  The parties are directed to a separate docket entry order (Dkt. 264) requesting further briefing on the question of applying Idaho law.

**Memorandum Decision and Order - 17**

**<u>ORDER</u>**

**IT IS THEREFORE ORDERED** that Defendants' Motion for Reconsideration,

Clarification, or in the alternative, Certification (Dkt. 177) is **DENIED IN PART** and Plaintiffs'

Motion for Reconsideration (Dkt. 211) is **DENIED.**

DATED:  **December 13, 2015**

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

**Memorandum Decision and Order - 18**