UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT CAYNE and PHYLLIS CAYNE, husband and wife; RONNIE RIVERA, individually; SEAN RIVERA, individually; KEN McELROY and LAURA McELROY, husband and wife; and the same on behalf of themselves and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>vs.<br><br>WASHINGTON TRUST BANK, a Washington corporation; and WEST SPRAGUE AVENUE HOLDINGS, LLC, a Washington limited liability company; and JOHN/JANE DOE I-V,<br><br>                    Defendants. | Case No. 2:12-cv-00584-REB<br><br> **MEMORANDUM DECISION AND ORDER ON QUANTUM OF PROOF ISSUES** |

On December 13, 2015, the Court requested supplemental briefing from counsel on the issue of whether Idaho or Washington law applies to the question of what quantum of proof is required for Plaintiffs in their remaining claim and, what then is that quantum of proof.  (Dkt. 264.)  The supplemental briefing was filed on December 21, 2015.  (Dkt. 277, 278.)  The Court now issues the following memorandum decision and order.

## BACKGROUND

This issue, of whether Plaintiffs' remaining claim is subject to a higher quantum of proof – "clear and convincing" (or a similarly described higher standard) rather than preponderance of the evidence – was first raised in the parties' cross-motions for summary judgment.  In ruling upon those cross-motions  (Dkt. 177, "the Order"), the Court ruled that Washington law applied, as it had

**MEMORANDUM DECISION AND ORDER- 1**

previously held in an earlier order (Dkt. 37), and said that preponderance of the evidence applies, as

the heightened "clear and convincing" standard was limited to situations distinct from the issue in this

case. (Dkt. 177 at 20-21).       Defendants (the "Bank") asked the Court to reconsider its decision that

"preponderance of the evidence" was the burden of proof for Plaintiffs' remaining claim, and to hold

that a heightened standard was applicable.  Alternatively, the Bank asked that the question be certified

to either  the Idaho Supreme Court or the Washington Supreme Court (depending upon which state law

applies).  (Dkt. 178-1 at 26.)

## ANALYSIS AND HOLDINGS

Plaintiffs contend that both Idaho and Washington law are applicable to Plaintiffs' claim.  They

argue that Idaho law applies to whether the Membership Agreement was breached and to any

affirmative defenses to that claim.[1]  (Dkt. 277 at 4.)  However, as to whether the Bank assumed (as the

assignee of the Membership Agreement) the contractual duty of repaying the membership deposit,

Plaintiffs contend that Washington law applies.  Plaintiffs argue that the assignment of the Membership

Agreement was a product of the Bill of Sale which in turn was a part of the Deed in Lieu Agreement

("DIL Agreement" or "DIL").  Hence, Plaintiffs contend that the issue of whether the Bank assumed

the membership deposit refund liability also stems from the same sources.  (*Id.*)

Plaintiffs point to the fact that this Court has already ruled that Washington substantive law

governs the interpretation of the DIL Agreement.  This issue should be no different, according to

---

[1]  The Court uses the term "Membership Agreement" in the singular to refer to the
agreement signed by the members of Black Rock at the time they joined the club.  The various
agreements are essentially identical, except for the differences between the names and addresses,
and the amount of the membership deposit. The Membership Agreement incorporated by
reference the Membership Plan.  *See* Dkt 92-1 at 24-32 (Membership Agreement); 92-1 at 2-24
(Membership Plan).

**MEMORANDUM DECISION AND ORDER- 2**

Plaintiffs. (*Id.* at 5.) In turn, Plaintiffs contend that Washington law requires that its claim that the Bank assumed the duty of refunding the membership deposits must be proved by a preponderance of the evidence. (*Id.* at 5-6.)

The Bank comes to the issue with a different argument. The Bank first suggests (albeit for the first time, in its motion for reconsideration) that if Plaintiffs' remaining claim is characterized as claiming *modification* of the DIL Agreement, then Washington law applies.[2] (Dkt. 278 at 3-4.) However, the Bank also contends that under Washington law a "clear and convincing" type standard applies because such a heightened quantum of proof, according to the Bank, applies to *all* liability assumption cases, even those outside of a mortgage assumption factual setting. (*Id.* at 4.) Alternatively, if the remaining issue is whether the Bank assumed the obligations under the Membership Agreement as an assignee, then Idaho law should apply and under Idaho law, Plaintiffs are required to prove by clear and unequivocal evidence that the Bank assumed the refund obligation. (*Id.*)

The Court has carefully considered the arguments of the parties, and concludes that Washington law applies to the elements of Plaintiffs' remaining claim, for the reasons described below.

## A.    Washington Law Applies.

There is a place for application of Idaho law in this case, but as to whether the Membership Agreement was breached when no refund was made of the Plaintiffs' membership deposits after the Club was closed. The Membership Agreement contained a choice of law provision calling for Idaho law. (Order, Dkt. 37.) This Order, however, decides what law applies to whether the Bank impliedly assumed the obligations of the Membership Agreement as an assignee of the Membership Agreement, not to whether or not the membership deposit refund duty of the Membership Agreement has been

---

[2]  The Court does not adopt this characterization of Plaintiffs' claim.

**MEMORANDUM DECISION AND ORDER- 3**

breached.

A federal court in diversity jurisdiction must  "follow the choice of law rules of the state in which it sits."  *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *see also Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 937 (9th Cir. 2001).  Idaho law draws upon the Restatement (Second) of Conflict of Laws to determining what law governs a contract, when there is a need for a choice to be made.  *Carroll v. MBNA America Bank*, 220 P.3d 1080, 1084 (Idaho 2009).  Under the Restatement, "[t]he law of the state chosen by the parties shall govern their contractual rights and duties will be applied if the particular issue is one which could have been resolved by an explicit provision in their agreement directed to that issue."  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(1) (1971).  Even if an issue could not be resolved by an explicit provision in the contract, the law of the chosen state will still apply unless:

> (A) the chosen state has no substantial relationship to the parties or the transaction and there is no reasonable basis for the parties' choice, or
>
> (B) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice by the parties.

*Id.* § 187(2).[3]  *See also Cerami-Kote, Inc. v. Energywave Corp.*, 773 P.2d 1143, 1145 n.1 (1989).

Here, the Bank and the Club at Black Rock, LLC ("LLC") agreed in the DIL Agreement that Washington law would apply.[4]  Specifically, Section 9:15 provided: "This Agreement will be governed

---

[3]  While the Court has held that the Uniform Commercial Code does not control the resolution of Plaintiffs' claim, it is useful to note that similar to the Restatement, the Uniform Commercial Code provides that choice of law provisions are enforceable, so long as the state chosen bears a reasonable relation to the transaction.  *See, e.g.*, I.C. § 28-1-105.

[4]  As it did in the Order (Dkt. 177), the Court will refer to "the LLC" to refer to the legal entity.  It will use "the Club" to refer to the golf course and related facilities.

**MEMORANDUM DECISION AND ORDER- 4**

by, and interpreted and enforced in accordance with, the laws of the State of Washington as applied to contracts made and to be performed in that state."  DIL Agreement § 9.15.  The "particular issue" involved here is clearly "one which could have been resolved by an explicit provision in their agreement directed to that issue." Further,  the issue  is inextricably linked to the DIL Agreement.  It is through the DIL Agreement and related Bill of Sale (each drafted by the Bank) by which the Bank received an assignment of nearly the entirety of all the real and personal property (including agreements) of the LLC, which also included the Membership Agreement.  The Bank took ownership of the LLC's assets pursuant to the DIL and then – in the allegations of Plaintiffs – operated the Club in a manner by which the Bank impliedly assumed the obligations of the LLC under the assigned agreements, including the Membership Agreement notwithstanding the language in the DIL by which the Bank sought to disclaim liability for the debts and obligations of the LLC.  The conduct that is decisive of whether the refund obligation was assumed by the Bank  is entwined with the DIL Agreement itself.

Further, Washington does have a substantial relationship to the parties and the transaction and there is a reasonable basis for the parties' choice    Even though the LLC's real property and its real property assets were located in Idaho, the Bank (and its subsidiary – West Sprague) are Washington companies, the lending relationship was centered in the Bank's Spokane loan office, the Bank had multiple loan relationships and accounts with Marshall Chesrown (the principal of the LLC), many of the Club's  members were Washington residents, and in such a setting Washington law is a reasonable basis for the choice of law between the Bank and the LLC.  Idaho would have been a suitable alternate choice, but the parties chose Washington.

Even if it were necessary to reach the next step in the analysis as to whether the chosen state's law recognizes the choice-of-law provision contained in the DIL (*Cerami-Kote*, 773 P.2d at 1145-46),

**MEMORANDUM DECISION AND ORDER- 5**

the answer to that question is yes.  In Washington, forum-selection clauses are presumptively valid and enforceable.  *Dix v. ICT Group, Inc.*, 161 P.3d 1016, 1020-21 (Wash. 2007).

Accordingly, under applicable Idaho law on choice-of-law principles, the choice of the Bank and the LLC that Washington law would apply to DIL Agreement is enforceable. Further, the choice of law provision in the DIL Agreement is intentionally expansive and not limited to specific, isolated situations.  It includes the "enforcement" and "interpretation" of the DIL Agreement.  This choice of law provision will be followed here, including specifically to the question of whether the Bank assumed the membership deposit refund obligation.

**B.      Preponderance of the Evidence is the Applicable Quantum
of Proof Under Washington Law.**

In civil cases generally, the quantum of proof required to prove a claim (or an affirmative defense) is a preponderance of the evidence.  *In re Exxon Valdez*, 270 F.3d 1215, 1232 (9th Cir. 2001); *see also Herman & MacLean v. Huddleston*, 459 U.S. 375, 387 (1983).   The Supreme Court has described the "preponderance" standard as embodied in the Due Process Clause, reflecting not only the weight of the private and public interests affected but also a societal judgment about how the risk of error should be distributed between the litigants.  *Santosky II v. Kramer*, 455 U.S. 745, 755 (1982). "While private parties may be interested intensely in a civil dispute over money damages, application of a 'fair preponderance of the evidence' standard indicates both society's 'minimal concern with the outcome,' and a conclusion that the litigants should 'share the risk of error in roughly equal fashion.'" *Id*. (quoting *Addington v. Texas*, 441 U.S. 418, 423 (1979)).

A heightened quantum of "clear and convincing evidence" is required in other types of cases, when the individual interests at stake in a state proceeding are both "particularly important" and "more

**MEMORANDUM DECISION AND ORDER- 6**

substantial than mere loss of money."[5]  *Id.* at 756.  Such cases (in contrast to the facts of this case) were described by the Supreme Court as those that threaten an individual with a significant deprivation of liberty or stigma, such as civil commitment, deportation, and denaturalization cases.  *Id.* at 756-57.

The Bank contends that under either Idaho or Washington law the applicable quantum of proof is  "clear and convincing" or "clear and unequivocal."  In its prior Order, the Court distinguished the Washington cases relied upon by the Bank as applying to cases involving the assumption of a mortgage debt, which is not the factual underpinning of this case. (Dkt. 177 at 20-21.)  The Bank has now cited to additional cases to further press its argument that the higher quantum of proof applies to this case as well.  However, these additional decisions cited by the Bank are similarly distinguishable from this case as to the pertinent issue.  For example, *Snohomish Cnty. Pub. Transp. Benefit Area Corp. v. FirstGroup America, Inc.*, 271 P.3d 850 (Wash. 2012) involved an indemnity agreement and applied the general rule pertaining to such agreements that the indemnitee will not be indemnified "against losses resulting from his own negligence unless this intention is expressed in clear and unequivocal terms."  *Id.* at 853 (internal quotation and citation omitted).  This case does not involve matters of an indemnitee's negligence.  Rather, it concerns whether  the Bank assumed a liability contained in an agreement assigned to the Bank,  as a function of the Bank's alleged actions undertaken in stepping into the shoes of the LLC in the operation of the Club.

Another case put forward by the Bank, *Priestly v. Peterson,* 145 P.2d 253 (Wash. 1944), involved a convoluted series of transactions among multiple parties dealing in part with the interest of a former husband and wife to stock held in a non-operating Washington mining company.  The case

---

[5]  Of course, the highest quantum of proof is that of "beyond a reasonable doubt," applied in criminal actions that may deny a defendant life or liberty.  *Id.* at 755-56.

**MEMORANDUM DECISION AND ORDER- 7**

involved a similar array of issues as to whether or not the parties who had entered into various agreements concerning the stock (with each other and with the former husband) had a duty to ensure that the former wife (Peterson) was paid the remainder of what was owed to her from a community property settlement agreement (the "divorce settlement") made with her ex-husband.

The facts of *Priestly* are much, much different than this case. The appellate court ruled that appellant Priestly – who had agreed to bankroll the re-opening of the mine – had not assumed the duty to make sure the ex-wife was paid under the divorce settlement. The decision went to great length to discuss the myriad and sometimes byzantine facts and details of the agreements and the principals involved. The decision noted that the recitals of one particular four-way agreement involving Priestly and Peterson's ex-husband said that the "second parties [which included Priestly] had 'agreed to assume and carry out the terms and conditions'" of the divorce settlement. In its holding, however, the court said that "'a recital is not binding in an action not founded on the contract'" and ultimately emphasized that even though there was evidence that Priestly's attorney had agreed that Peterson was to be fully paid what was owed to her under the divorce settlement from the funds advanced by Priestly, there was no evidence to indicate that Priestly's attorney had the authority to bind Priestly to assume the duties of the divorce settlement agreement. *Priestly*, 145 P.2d 253, 254-262.

The *Priestly* case focused upon details not found in this case. It is correct to say, which appears to be the Bank's intention, that the *Priestly* court was discussing the ultimate issue of whether Priestly had assumed responsibility to make certain that Peterson was fully paid under the divorce settlement when the court said – after summarizing the multiple and diverse agreements and the multiple parties – that "the fact that appellant entered into such a fantastic financial arrangement should clearly appear from the evidence before it should be held as a matter of law that he assumed such an obligation." But

**MEMORANDUM DECISION AND ORDER- 8**

in this case, there is not that myriad of agreements and parties, which needed to be assembled like links

in a chain in the *Priestly* case.  Further, the court's statement that there needed to be "clear evidence"

is certainly not, in context, a ruling upon the quantum of proof  required in that case – there is no

discussion of such an issue at all, and the statement is purely dicta made in a commentary upon the

unusual facts of the case.  Indeed, much of the discussion of the case (even though made in the context

of a third-party assignment analysis) is more apropos of direction of this case, as citations from other

cases and treatises contained in the decision focus upon the fact intensive nature of a such a claim. *i.e.*:

> It is true, as argued by [Peterson], that the court may scrutinize the acts of the parties, and is not
> required to depend only on oral or written statements in determining whether or not a contract
> has been assumed.  If the conduct of a party, under the circumstances in which he was acting,
> be inconsistent with any other interpretation, it may be held that he has assumed an obligation,
> although he never, by word or writing, agreed to assume it.

*Id.*, at 261.

Whether or not the facts of this case are "fantastical" as the Bank contends, or actionable as the

Plaintiffs contend, will be for the jury to decide.

The other cases relied upon by the Bank concern issues of mortgage liability assumption which

the Court has already addressed in its prior Order as not applicable or involve theories that are not

before the Court in this case.  *See, e.g., Fluke Capital & Mgmt. Servs. Co. v. Richmond*, 724 P.2d 356

(Wash. 1986) (transferee of land will only be held personally liable for the debt underlying the mortgage

upon clear and convincing proof of assumption of debt); *Rolph v. McGowan*, 579 P.2d 1011 (Wash. Ct.

App. 1978) (requiring clear, cogent, and convincing evidence to reform a contract due to mistake of

fact); *Kuest v. Regent Assisted Living, Inc.*, 43 P.3d 23 (Wash. Ct. App. 2002) (to modify any traditional

common law at-will employment relationship, there must be enough factual conduct inconsistent with

express terms of the original contract, including any disclaimer).

**MEMORANDUM DECISION AND ORDER- 9**

The Court is fully mindful that there are cases in Washington (and in Idaho) that call for "clear and unequivocal" evidence, or "clear and convincing" evidence, or some phrase of similar meaning in certain types of cases involving questions of whether an assignee is responsible for a liability first attached to the assignor. Such rulings most often appear in assumption of mortgage cases, but even then the courts are not always uniform in their discussion of the applicable standard of proof. Many of the cases are (as in this case) heavily fact dependent as to whether there has been as assumption of an underlying mortgage debt, or not. These cases (from Washington or elsewhere) do not reveal a general rule that such a heightened quantum of proof applies to *any* kind of claim, upon any constellation of facts, by which recovery is sought on a liability allegedly assumed by the assignee of a contract. Nor has the Court found mention of any such general rule in a review of the contract law treatises. *See generally* 29 WILLISTON ON CONTRACTS § 74:35 (4th ed.); RESTATEMENT (SECOND) OF CONTRACTS § 328; RESTATEMENT (FIRST) OF CONTRACTS § 164.

Nonetheless, the Court has considered carefully whether there is a thread of commonality between the cases relied upon by the Bank which impose a heightened quantum of proof upon some types of claims (such as the mortgage assignment cases) and this case, and whether any such thread has the strength to support a ruling here that the heightened quantum of "clear and convincing" proof should also apply to this case. The Court concludes it does not. There is no rule of general application in Washington calling for such a higher quantum of proof in every type of case seeking to impose liability upon the assignee of a contract, for a liability arising from such contract. There is, however, a general rule that civil claims are proved by a preponderance of the evidence. The latter rule, as described by the U.S. Supreme Court, is embedded in principles of due process and the policy that the litigants should "share the risk of error in roughly equal fashion." *See supra*, p. 6-7

**MEMORANDUM DECISION AND ORDER- 10**

Accordingly, the appropriate standard is preponderance of the evidence.

In its motion for reconsideration, the Bank also sought certification to the Washington Supreme Court on this issue.  In general, certification "rests in the sound discretion of the federal court."  *Lehman Brothers v. Schein*, 416 U.S. 386, 391 (1974).  Mere difficulty in ascertaining and applying the law is not a sufficient reason to certify a question to a state supreme court.  Additionally, certification is not obligatory, even when the law is undetermined.  *See Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1009 (9th Cir. 2009).  Certification should not be used simply because there is some difficulty in ascertaining state law, but may be appropriate if the issue will materially alter the decision upon federal constitutional questions.  *Savage Land, LLC v. Spokane County Water Dist. No. 3*, 2013 Westlaw 2251567 (E.D. Wash. May 22, 2013).

There is some uncertainty on this issue, to be sure, but in these circumstances that is not a sufficient reason for certification.  There are no federal constitutional questions which turn upon the issue of state law involved.  Similarly, even if a party might prefer certification because of a disagreement with the Court's holding upon the applicable law, such a preference is not a basis for certification.  Further, the very process of *seeking* certification would require additional delay, with no guarantee that the highest state appellate court would accept the request for certification.[6]  Even if the certification is accepted, the decision process in that arena would further delay the ultimate denouement of the case for another year or more.  Such additional delay, on top of the many other delays in this case which have been described in prior rulings, would be untenable.  Hence, in the exercise of its discretion for the reasons described above, the Court will not seek certification.

---

[6]  Acceptance of a certified question of law is not mandatory.  Washington rules of appellate procedure make clear that the Washington Supreme Court "*may*" entertain such a request.  RAP 16.16.

**MEMORANDUM DECISION AND ORDER- 11**

**SO ORDERED.**

DATED:  **February 11, 2016**

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER- 12**