UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT CAYNE and PHYLLIS CAYNE, husband and wife; RONNIE RIVERA, individually; SEAN RIVERA, individually; KEN McELROY and LAURA McELROY, husband and wife; and the same on behalf of themselves and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> WASHINGTON TRUST BANK, a Washington corporation; and WEST SPRAGUE AVENUE HOLDINGS, LLC, a Washington limited liability company; and JOHN/JANE DOE I-V, <br><br> Defendants. | Case No. 2:12-cv-00584-REB <br><br> **ORDER ON DEFENDANTS' MOTIONS IN LIMINE (DKTS. 202, 246)** |

Currently pending before the Court are two sets of motions in limine filed by Defendants (Dkts. 202, 246) and a motion to strike filed by Plaintiffs (Dkt. 248).

The second set of motions (Dkt. 246) was untimely under the Court's scheduling order, and is the subject of Plaintiffs' motion to strike. There was no effort on the part of Defendants to address the untimeliness of the motion, or to offer the requisite good cause to support a request for relief from the deadlines. That would have been best practices, and is required as a general matter. However, to the extent that the late-filed motions in limine are true requests for pretrial rulings upon evidentiary rulings, the Court will consider and rule upon the same. Accordingly, Plaintiffs motion to strike is denied.

### Defendants' Motion in Limine (Dkt. 202)

In this filing, Defendants seek to exclude evidence and argument regarding a myriad of subjects,

ORDER - 1

including: (1) alleged "misconduct" by Defendants or the Club[1]; (2) the LLC's 2010 tax return and its treatment of cancellation of debt income; and (3) certain opinions and analyses from John Magnuson, the attorney for the purchasing group (The Golf Club at Black Rock, LLC).  (Dkt. 202.)

As to allegations of misconduct (*i.e.*, that Defendants or the LLC were guilty of fraud, negligence, or other misconduct) , Defendants contend that such testimony is highly prejudicial and would shed little light on the remaining issue for trial.  (Dkt. 202-1 at 4.)  As to the 2010 tax return, Defendants contend this sheds no light on Defendants' conduct or intent during the relevant time period. There is no indication Defendants had any part in the preparation of the return or were aware of its contents.  (*Id.* at 5.)  As to Magnuson, Defendants argue: (1) the DIL documentation effectively disclaimed defendants' liability for the refund obligation, as the Court ruled and (2) Magnuson's legal opinions and reasons for requiring termination of the Membership Plan as a condition of closing shed no lights on Defendants' conduct and intent.  There is grave potential for confusing and misleading the jury.  (*Id.* at 5-6.)

Plaintiffs respond as follows: (1) that Plaintiffs are entitled to support their claim for punitive damages by looking at Defendants' overall conduct and circumstances; (2) the LLC's tax return and its treatment of the cancellation of debt income has a tendency to make it more probable than it would be without the evidence that the LLC believed it no longer was obligated to refund the Members' Deposits and that this liability was assumed by Defendants; (3) Magnuson's belief, right or wrong, that his client could possibly be subject to liability for the membership deposits if the memberships were not terminated is highly relevant.  (Dkt. 203).

The briefing on these particular motions was completed before the Court issued its ruling on Plaintiffs' motion to add a claim for punitive damages.  Consistent with that ruling, and the Court's prior rulings dismissing Plaintiffs' claims other than the remaining breach of contract claim, the Court will grant Defendants' motion to prohibit use of evidence relating to the specifically enumerated items in

---

[1]  Abbreviations are intended to be consistent with those used in prior rulings.

ORDER - 2

this motion in limine (as described above), *but only insofar* as such evidence would have been related specifically to the dismissed claims.  Otherwise, the evidence must still meet the usual tests of relevancy, without being repetitive, unduly confusing or misleading, or unduly prejudicial in a manner that outweighs any probative value of the evidence.  Those nuances can only be assessed in the context of trial and the Court will reserve such rulings, if such objections are raised anew.

In that regard, the Court reminds the parties that it has previously ruled that evidence from the pre-DIL period may be relevant to the ultimate question the jury will be called upon to decide.  That includes the information drawn upon and the decisions made by the Bank to do what it decided to do in regard to the Club and the outstanding indebtedness, because such information has some relevance in the abstract to the what may have followed in the decisions and conduct post-DIL.  However, that is not a one-way street.  The Defendants may also see some useful evidence in the pre-DIL period to help prove their case, and certainly any evidence or testimony drawn upon by Defendants regarding the same has the potential to open the door to exploration of the same by the Plaintiffs (and vice-versa). Accordingly, it is neither reasonably possible, nor appropriate in the context of the remaining issues, to draw an exact line around such evidence for trial in ruling upon the various in limine motions that address such evidence.  However, the Court is able to say that the more attentuated the relevance of such evidence, and the more likely it is that such evidence may be misleading or confusing to the jury, the less likely it is that the Court will permit its use or introduction.  Further, the parties are reminded that the time consumed by disputes over evidence will count against the total time alloted to each side for this trial, and that the party losing any such dispute will have the entirety of the time consumed by such dispute charged against its total time.

### Defendants' Supplemental Motions in Limine Nos. 4-26 (Dkt. 246), Plaintiffs' Motion to Strike (Dkt. 248)

Many of the subjects described in Defendants' second set of motions in limine (Dkt. 246) fall under the same general category of evidence as described and addressed immediately above, pertaining

ORDER - 3

to Defendants' first set of motions in limine. Those that the Court puts in that category will reference

to the reasoning described above, identified as "Pre-DIL Conduct."

**No. 4.**  Argument or evidence asserting or claiming that Defendants engaged in "bad acts"

or "intentional misconduct" in any loan transaction or dealings with the LLC or Chesrown.

Plaintiffs' Response:  Request is overbroad and should be denied and counsel can object at trial.

Some of the history and context of the loan, and the Bank's knowledge of the members, their

membership contracts and deposits all played a role in the ultimate decision to do a DIL Agreement and

gives context to the trier of fact of the Bank's intent thereafter as shown by its conduct.

**Ruling:** This subject falls within the Court's earlier ruling on Pre-DIL Conduct.

**No. 5.**  Argument or evidence that the August 11, 2010 DIL transaction between the Bank and

the LLC/Chesrown was "secretive," "improper," "unfair," made in bad faith, etc.

Plaintiffs' Response: Overbroad request.  However it came about, the DIL evidence is relevant

to providing the jury context of the DIL transaction and post-DIL period.

**Ruling:**  This subject falls within the Court's earlier ruling on Pre-DIL Conduct.

**No. 6.**  Argument or evidence that August 23, 2010 assignment transaction between the Bank

and West Sprague was improper, devious, made in bad faith, etc.

Plaintiffs' Response: Overbroad.  Evidence showing that the assignment did not act as

a novation is at the heart of this matter and is therefore relevant and admissible.

**Ruling:** This subject falls within the Court's earlier ruling on Pre-DIL Conduct.

**No. 7.**  Argument or evidence that (1) the Bank's assignment to West Sprague failed to release

or otherwise eliminate the Bank's purported obligation to refund initiation fees to Plaintiffs and the

Class beyond that date; (b) that the Bank is or was a "co-obligor" with West Sprague as to any refund

ORDER - 4

liability; or (c) or that no novation occurred when the assignment to West Sprague took place.

Plaintiffs' Response: This seeks to exclude the very evidence that is at the center of this case - Defendants' co-obligor liability, that West Sprague is the alter ago of the Bank and that the Bank must be accountable for any judgment.

**Ruling:** Denied. Such evidence is directly relevant to Plaintiffs' theory of liability, as well as to various of Defendants' defenses. As to particular details of such evidence that may be offered at trial, the subjects fall within the Court's earlier ruling on Pre-DIL Conduct.

**No. 8.** Argument or evidence the Bank or West Sprague collected Member Dues at any time during the 79 days between August 11, 2010 and October 31, 2010 *or* that either Defendant was an employer of Gorton, Rountree, and/or any other employees of the Club.

Plaintiffs' Response: This also seeks to exclude evidence at the heart of this case. All evidence is relevant and should be admitted.

**Ruling:** Denied. Such evidence is directly relevant to Plaintiffs' theory of liability, as well as to various of Defendants' defenses. As to particular details of such evidence that may be offered at trial, the subjects fall within the Court's earlier ruling on Pre-DIL Conduct.

**No. 9.** Argument or evidence that the LLC failed to exist as a legal entity at any time between August 11, 2010 and October 31, 2010.

Plaintiffs' Response: No opposition.

**Ruling:** Any ruling on this issue is reserved until trial, if such argument is made or evidence is offered, and will be decided upon the context of the dispute at that time.

**No. 10.** Argument or evidence that the Bank's loan transactions and/or dealings with the LLC or Chesrown deviated from proper or customary banking standards and practice.

ORDER - 5

Plaintiffs' Response: No opposition.

**Ruling:** Granted, subject, however, to the Court's earlier ruling on Pre-DIL Conduct. The use of such evidence as might go solely or primarily to the nature of proof for the claims that have been dismissed, is prohibited. To the extent that some overlap exists that would be relevant to the breach of contract claim, the use of such evidence is subject to the Court's earlier ruling on Pre-DIL Conduct.

**No. 11.** Argument or evidence regarding any transaction or practice of the Bank or West Sprague that loan repayment or use of the loan proceeds by the LLC or Chesrown were improper or otherwise unjustified.

Plaintiffs' Response: The Bank's knowledge that the Club was always unprofitable and needed the membership deposit cash flow to survive from year-to-year is relevant to the Bank's decision, and the resulting consequences of that decision, to pursue a DIL in addition to continuing to operate the Club, instead of electing other remedies that could have avoided the Defendants' liability for the deposits.

**Ruling:** Such evidence is relevant, from the Plaintiffs' side of the issue, as to the potential risk that the Bank was undertaking in deciding to pursue a non-judicial foreclosure of its security, and as such is equally relevant to the pre-DIL evidence the Bank has indicated it would put forward. Therefore, this motion is denied. However, as with other such evidence relating to that period, the use of such evidence is subject to the  Court's earlier ruling on Pre-DIL Conduct.

**No. 12.** Argument or evidence that any loan transaction relating to the LLC was a "sham loan" or improper, devious, etc.

Plaintiffs' Response: No opposition.

**Ruling:**  Granted, subject, however, to the Court's earlier ruling on Pre-DIL Conduct. The use

ORDER - 6

of such evidence as might go solely or primarily to the nature of proof for the claims that have been dismissed, is prohibited.  To the extent that some overlap exists that would be relevant to the breach of contract claim, the use of such evidence is subject to the  Court's earlier ruling on Pre-DIL Conduct.

**No. 13.**  Argument or evidence that the Bank or West Sprague had any "special relationship" or owed any fiduciary type duties to Plaintiffs.

Plaintiffs' Response: It is undisputed that the Bank took an assignment of the declarant rights to the Black Rock HOA and placed its employees on the HOA Board which creates a fiduciary relationship between the Bank, those employees and the members of the HOA (who are all Plaintiffs).

**Ruling:**  Denied in part, and granted in part. Such evidence will only be permitted to extent that it is relevant to the breach of contract issue, and its probative value is not outweighed by the risk of undue prejudice, or the risk of confusing or misleading the jury.  The particulars of any dispute over the evidence in that context will be decided at trial.

**No. 14.**  Argument that the Bank or West Sprague engaged in any oppressive conduct with or against Plaintiffs.

Plaintiffs' Response: The Bank (and then West Sprague) agreed to act in the members' best interest in section 9.11 of the DIL Agreement.  Permanently closing the Club in connection with the sale of the Club's property with no intent to ever refund the fully refundable membership deposits is entirely relevant to Defendants' intent to assume the liabilities of the membership agreements and their conduct directly violates the DIL.

**Ruling:**  Denied.  Among other things, the definition of what constitutes "oppressive" conduct in the array of evidence that has been gathered and is potentially to be offered at trial, is very broad and obviously not agreed upon by the parties. However, such evidence will only be permitted to extent that

**ORDER - 7**

it is relevant to the breach of contract issue, and its probative value is not outweighed by the risk of undue prejudice, or the risk of confusing or misleading the jury. The particulars of any dispute over the evidence in that context will be decided at trial.

No. 15.   Argument or evidence that (1) West Sprague is an "alter ego" of the Bank; (2) any action or conduct by West Sprague was or should be treated as actions or conduct of the Bank; or (3) West Sprague was not a legally separate entity from the Bank at all times between August 23, 2010 and October 31, 2010.

Plaintiffs' Response: This request seeks to exclude evidence at the heart of the case - the Bank's co-obligor liability, that West Sprague is alter ego of the Bank, etc.

Ruling:  Denied.  Such evidence is directly relevant to Plaintiffs' theory of liability, as well as to various of Defendants' defenses.  As to particular details of such evidence that may be offered at trial, the subjects fall within the Court's earlier ruling on Pre-DIL Conduct.

No. 16.   Argument or evidence that fails to distinguish between the Bank and West Sprague or that attempts to collectively identify both as "the Bank."

Plaintiffs' Response: Same as opposition to #15, and #6-8.  This goes to the heart of the case.

Ruling:  Denied.  Such evidence is directly relevant to Plaintiffs' theory of liability, as well as to various of Defendants' defenses.  Defendants are free to emphasize their position as to the distinct nature of the two entities and the significance of the same as that may pertain to the issues the jury must decide.

No. 17.   Argument or evidence that West Sprague was not properly formed, or was formed for an improper purpose, or was used in an effort to hinder, delay, or defraud known creditors.

Plaintiffs' Response: Same as #15, #6-8.

ORDER - 8

**Ruling:** Denied.  Such evidence is directly relevant to Plaintiffs' theory of liability, as well as to various of Defendants' defenses. Defendants are free to emphasize their position as to the distinct nature of the two entities and the significance of the same as that may pertain to the issues the jury must decide.  As to particular details of such evidence that may be offered at trial, the subjects fall within the Court's earlier ruling on Pre-DIL Conduct.

**No. 18.**  Argument or evidence that an injustice or equality would result if West Sprague's acts are treated as acts of West Sprague and not imputed to the Bank.

Plaintiffs' Response: Same as #15, #6-8.

**Ruling:** Denied.  Such evidence is directly relevant to Plaintiffs' theory of liability, as well as to various of Defendants' defenses. Defendants are free to emphasize their position as to the distinct nature of the two entities and the significance of the same as that may pertain to the issues the jury must decide.  As to particular details of such evidence that may be offered at trial, the subjects fall within the Court's earlier ruling on Pre-DIL Conduct.

**No. 19.**  Any reference to the Bank's general counsel, Burke Jackowich, who will be serving at the client representative at trial, as a "lawyer" or "general counsel."  He should be referred to, if at all, as "Senior Vice President and Corporate Secretary."

Plaintiffs' Response: No opposition

**Ruling:** Granted.

**No. 20.**  Any arguments or reference that the initiation fee paid by Plaintiffs was legally a "deposit."

Plaintiffs' Response: Overbroad.  The membership documents, as well as the stipulated definition of the class, uses the term refundable membership deposits.

**ORDER - 9**

**Ruling:**  Denied.  This question is part and parcel of the claim remaining for trial.  The parties

are free to present evidence and argument as to their respective positions on such matters, whether they

want to call it an "initiation fee" or a "deposit."

**No. 21.**  Testimony from Bank officers: Dean Emmanuels, Mark Perko and/or Phil Buchwaldt.

Plaintiffs' Response: Overbroad.  All such witnesses hold relevant evidence to this dispute

relating to the loan history leading up to the DIL.  Plaintiffs have the right to try their case with

whichever of these witnesses they see fit subject to not presenting cumulative evidence or violating an

existing order of the Court.

**Ruling:** Denied.  It would go too far to make a blanket pretrial prohibition upon the use of

testimony from such persons by Plaintiffs.  To the extent that the particular topics of such testimony are,

in the context of the proof at trial, otherwise objectionable, the Court will consider and decide upon such

matters during trial.

**No. 22.**  Any reference to the fact that motions in limine have been presented to and ruled upon

by the Court.

Plaintiffs' Response: No opposition.

**Ruling:** Granted.

**No. 23.** Any argument or evidence regarding any documents, information, or other evidence

requested in discovery but which were not previously provided by Plaintiffs.

Plaintiffs' Response: Plaintiffs Robert and Phyllis Cayne recently found more documents and

immediately produced them. They relate solely to the payment of dues in the post-DIL period and the

Caynes' resignations from the Club in late September 2010.  These documents are relevant and to the

extent Mr. Cayne did not disclose these earlier (when first requested), such argumnet is better dealt with

**ORDER - 10**

by impeachment rather than exclusion.

**Ruling:** The particular documents referenced by Plaintiffs' response will be permitted to be offered by the Plaintiffs, because of the particular facts that relate to their discovery and production, but Defendants will, of course, be permitted to meet such evidence and cross-examine upon any use of the same.  Otherwise, if either party intends to make argument drawing upon, or use in either direct or cross-examination, any document that is otherwise subject to the rules requiring initial disclosures or subject to a discovery request, but was not produced, then such party must request a hearing upon the use of such a document, outside the presence of the jury, and obtain the approval of the Court before making use of any such document.  The mere fact that such a request is made does not mean that the Court will approve making use of the document; rather, the presumption will be that use of such a document will not be permitted, given the fact that it had not previously been produced.

**No. 24.**  Any evidence or reference to any offers of settlement or compromise made during this litigation.

Plaintiffs' Response: No opposition.

**Ruling:** Both parties are subject to the requirements of Federal Rule of Evidence 408, concerning "Compromise Offers and Negotiations," and are expected to follow the limitations and exceptions of that rule.

**No. 25.**  Any argument or suggestion that the jury should put themselves in Plaintiffs' shoes or which violates the "Golden Rule."

Plaintiffs' Response: No opposition.

**Ruling:** The general admonition against an attorney, for whichever party, asking jurors to put themselves in the shoes of any of the parties to the case, in whatever form that might take, applies to this

**ORDER - 11**

case in the same measure as it would in any other trial, and it does not require a motion in limine to impose such an obligation upon counsel.  The Local Rules of this District, and the Idaho Rules of Professional Conduct govern the conduct of any attorney appearing (whether admitted for all purposes, or admitted *pro hac vice* for a particular case) before the U.S. District Court for the District of Idaho. Such rules include the general nature of the so-called Golden Rule, along with similar limitations upon the nature of proof and argument at trial, contained in Rule 3.4 of the Idaho Rules of Professional Conduct, dealing with Fairness to Opposing Party and Counsel.

**No. 26.**  Any exhibits or illustrative materials for use during opening statements without prior notice to the Court and opposing counsel.

Plaintiffs' Response: This request should not apply to admitted exhibits stipulated to by the parties.  Plaintiffs request the Court advise how much notice it wants the parties to provide.

**Ruling:** This particular request was not made during the pretrial conference, but it is not an unusual request and the Court will require the parties and their counsel to comply with the following:

A.      Exhibits or illustrative material consisting of documents can only be drawn from exhibits as to which both parties have stipulated to admission.  If the exhibit or illustrative material consists solely of such document(s), then the Court will not require prior notice to opposing counsel or the Court.  It is very unlikely that the Court would sustain an objection to the use of such a document during an opening statement (subject, however, to the Court's earlier ruling on Pre-DIL Conduct.)

B.      Exhibits or illustrative material that do not consist solely of documents drawn from exhibits as to which both parties have stipulated to admission, must be disclosed to opposing counsel no later than 5 p.m. PST on February 26, 2016.  If the opposing party

ORDER - 12

objects to the use of such an exhibit or illustrative material, then that objection must be filed in a memorandum not to exceed five pages, no later than 5 p.m. PST on February 29, 2016, with the party seeking to use such an exhibit or illustrative material permitted to respond in a memorandum also not to exceed five pages, no later than 5 p.m. on March 1, 2016.  The Court will then rule on whether such an exhibit or other illustrative material may be used in the opening statement.

### ORDER

**IT IS THEREFORE ORDERED:**

1)      Defendants' Motion in Limine (Dkt. 202) is GRANTED IN PART and DENIED IN PART, in accordance with this order.

2)      Defendants' Supplemental Motions in Limine 4-26 (Dkt. 246) is GRANTED IN PART and DENIED IN PART.

3)      Plaintiffs' Motion to Strike (Dkt. 248) is DENIED.

DATED:  **February 20, 2016**

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge