# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT CAYNE; RONNIE RIVERA; SEAN RIVERA; KEN McELROY; individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>      vs.<br><br>WASHINGTON TRUST BANK, a Washington corporation; and WEST SPRAGUE AVENUE HOLDINGS, LLC, a Washington limited liability company,<br><br>      Defendants. | Case No.: 2:12-cv-00584-REB<br><br>**MEMORANDUM DECISION AND ORDER SETTING AMOUNT OF AWARD OF ATTORNEY FEES (DKT. 392)** |

This Court has previously issued its Memorandum Decision and Order re: Defendants' Motion for Attorney Fees and Petition for Costs (Dkt. 492). In that decision, the Court ruled that Defendants were entitled an award of fees and costs in this matter, but it did not rule upon the amount of such an award. The Motion seeks an award of attorney fees and costs incurred over a period of multiple years, involving four different law firms. Having carefully considered the factual record, and otherwise being fully advised, the Court enters the following decision setting the amount of recovery for attorney fees and costs.

## BACKGROUND

The facts of this case are detailed in multiple decisions issued in the course of the litigation. *See, e.g.*, Dkts. 44, 174, 177, 263, 457. Recounted briefly here are pertinent details of the procedural history and substantive facts that bear upon the Fee Motion. Plaintiffs were members of the "Club at Black Rock" (the "Club"), a golf course and residential resort community located on the shores of Lake Coeur d'Alene, Idaho. Marketed and designed for

people of affluence, Plaintiffs each paid a large sum of money as a membership deposit to become members of the Club. In doing so, they entered into Membership Agreements with the Club. Those agreements required payment of a membership deposit but also called for a return of the deposit under certain conditions, which included termination of membership, termination of the Membership Plan, or discontinuance of Club operations.

A limited liability company owned the Club, which went by the name of The Club at Black Rock, LLC (the "LLC"). Over time, the LLC borrowed more than $12 million from Defendant Washington Trust Bank ("Washington Trust"). The loans making up that debt were secured by various means, including security interests in the real and personal property connected with the Club. When the LLC fell into significant financial difficulty, the LLC and Washington Trust negotiated a work-out agreement, culminating in the execution of an "Agreement for Deed in Lieu of Foreclosure" (the "DIL"). Pursuant to the DIL, Washington Trust released the LLC from all its debts and liabilities in exchange for conveyance of the real and personal property associated with the Club, and it released Marshall Chesrown, the individual primarily responsible for the development of the Club, from any personal liability for the indebtedness.[1]

In this certified class action lawsuit, Plaintiffs brought claims for breach of contract, misrepresentation/fraud, and a consumer protection act violation, and they sought to recover from Washington Trust the membership deposits they had paid to the Club and other alleged damages. (Dkt. 1-1). This Court granted in part and denied in part Defendants' Motion for

---

[1] Washington Trust transferred nearly the entirety of the property from the DIL to its wholly-owned subsidiary, Defendant West Sprague Avenue Holdings, LLC. For ease of discussion, the Court will refer to both as "Defendants" or collectively as "Washington Trust" in this Decision.

Judgment on the Pleadings. (Dkt. 44). Relevant here, the Court ruled that Plaintiffs had stated a plausible claim for relief for breach of contract; however, the Court dismissed, without prejudice, Plaintiffs' claims for misrepresentation/fraud and violation of the Idaho Consumer Protection Act. *See id.* After further motion practice, the Court granted in part and denied in part both Plaintiffs' and Defendants' Motions for Summary Judgment. (Dkts. 174, 177.)

A two-week jury trial followed on the remaining claims, resulting in a verdict in Defendants' favor. The Court entered rulings on Plaintiffs' Motion for Judgment as a Matter of Law and Motion for New Trial (as well as other post-trial motions), following which the Court ruled that Defendants were entitled to recover attorney fees. (Dkt. 492). The decision denied Defendants' request for nontaxable costs. *Id.* at 12–13. However, the Court did not rule at that time upon the amount of any attorney fee award because of the voluminous record and because of the Court's concern over the potential for duplication of effort, given that Defendants employed four different law firms in the case, including one that was brought into the case only shortly before trial. The Court now issues this Decision setting the amount of the fee award, and the Court's reasoning in support of that award.

## LEGAL STANDARD

This case sits before this Court under diversity jurisdiction. As such, state law not only determines the right to attorney fees, but also supplies the method of calculating the fees. *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). This is because "calculation of the amount of the fee is bound up in the substantive state right." *Id.* As discussed in this Court's prior order, Defendants are entitled to attorney fees under Idaho Code § 12-120(3). Thus, the fee award must also be calculated by applying Idaho law.

Under Idaho law, a prevailing party seeking attorney fees must comply with the

requirements set forth in Idaho Rule of Civil Procedure 54 ("I.R.C.P. 54"). Among these is a requirement that any claim for attorney fees "must be supported by an affidavit of the attorney stating the basis and method of computation." I.R.C.P. 54(e)(5). In considering the request, the Court applies the template of I.R.C.P. 54(e)(3), which provides in pertinent part:

> If the court grants attorney fees to a party or parties in a civil action it must consider the following in determining the amount of such fees:
> (A) the time and labor required;
> (B) the novelty and difficulty of the questions;
> (C) the skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law;
> (D) the prevailing charges for like work;
> (E) whether the fee is fixed or contingent;
> (F) the time limitations imposed by the client or the circumstances of the case;
> (G) the amount involved and the results obtained;
> (H) the undesirability of the case;
> (I) the nature and length of the professional relationship with the client;
> (J) awards in similar cases;
> (K) the reasonable cost of automated legal research (Computer Assisted Legal Research), if the court finds it was reasonably necessary in preparing a party's case;
> (L) any other factor which the court deems appropriate in the particular case.

"The court need not specifically address all of the factors contained in I.R.C.P. 54(e)(3) in writing, so long as the record clearly indicates that the court considered them all." *Thomas v. Thomas*, 249 P.3d 829, 839 (Idaho 2011).

Under Idaho law, trial courts awarding attorney fees are entitled to wide discretion. Such discretion includes excluding attorneys' travel time (*Smith v. Mitton*, 104 P.3d 367, 376 (Idaho 2004)), excluding duplicated effort (*Craft Wall of Idaho, Inc. v. Stonebraker*, 701 P.2d 324, 326–327 (Idaho App. 1985)), and excluding excessive time (*P.O. Ventures, Inc. v. Loucks Family Irrevocable Trust*, 159 P.3d 870, 876 (Idaho 2007)).

When considering the prevailing charges for like work under I.R.C.P. 54(e)(3)(D), the court considers "the fee rates generally prevailing in the pertinent geographic area." *Lettunich v.*

*Lettunich*, 111 P.3d 110, 120 (Idaho 2005). The pertinent geographic area "is the area from which it would be reasonable to obtain counsel." *Lettunich v. Lettunich*, 185 P.3d 258, 262–263 (Idaho 2008).

Finally, "[t]o properly determine reasonableness under Rule 54(e), a court must have sufficient information to consider the relevant factors." *Bailey v. Bailey*, 284 P.3d 970, 974 (Idaho 2012). That burden falls upon the party seeking to recover attorney fees, and there is no responsibility on the Court to ferret out or seek to divine the information which might support a claim for attorney fees. Rather, if a prevailing party fails to provide the court with enough information to measure the reasonableness of the requested fees, the court may deny a request for fees. *Id.* at 975.

**DISCUSSION AND ANALYSIS**

**1. In general.**

Defendants have been represented by numerous attorneys associated with four different firms. Defendants seek recovery of fees from the work of nearly all of those lawyers. In total, Defendants request $2,097,011.61 in attorney fees for work performed through March 31, 2016.[2] Mem. ISO Defs.' Mot. for Att'y Fees 5 (Dkt. 392-1).[3] Broken down, the amount includes $549,892.00 in fees for work performed by Dunn & Black, P.S.; $1,402,323.65 in fees for work performed by Davis Wright Tremaine LLP; $9,676.46 for work performed by William Appleton; and $135,119.50 for work performed by K&L Gates, LLP. *Id.* at 8.

---

[2] This includes professional fees by paralegals and legal interns, the recovery of which may be requested under Idaho substantive law. I.R.C.P. 54(e)(1). This Decision uses the term "attorney fees" to include fees for attorneys, paralegals, and legal interns.

[3] The case is currently on appeal to the Ninth Circuit Court of Appeals. The decision here does not involve any issue over fees and costs after the March 31, 2016 date.

The fees requested for each firm's time will be addressed separately. In doing so, the Court has considered carefully and thoroughly each of the factors prescribed in I.R.C.P. 54(e)(3), as to each firm. Important to that analysis is "the amount involved and the results obtained" per I.R.C.P. 54(e)(3)(G). The record before the Court indicates that shortly before trial, Plaintiffs' counsel contended that Plaintiffs' case was worth at least $50,000,000 and that, if they prevailed, they would be entitled to an attorney fee award of $7,000,000. Childress Aff. Ex. G (Dkt. 392-9). Regardless of whether such amounts were probable, possible, or postured, the amount Plaintiffs contended to be at stake was enormous, and in that light the verdict obtained in favor of Defendants was inescapably consequential.

The Plaintiffs filed a response opposing the motion (Dkt. 461); however, their opposition focused exclusively on the entitlement to fees, rather than on the reasonableness of the amount of the fees requested. Nonetheless, the Court has the duty to review the reasonableness of each request and to award or deny fees as appropriate under the circumstances.

### 2. Rule 54(e)(3) factors.

The Court's assessment of the I.R.C.P 54(e)(3) factors is set out below.[4] As previously noted, the Court has considered each of the factors as they weigh against or in favor of the Defendants' fee motion.

### (i)    Factors (A) and (B)

These factors call on the Court to consider the "time and labor involved" and the "novelty and difficulty of the questions." This case involved a thicket of legal issues and myriad factual issues. As described in the various substantive motion decisions authored by the Court, and in

---

[4] There are references elsewhere in this decision that also illustrate the Court's analysis of the fee motion, and which also are part of the Court's application of I.R.C.P 54(e)(3) to the fee motion.

the briefing submitted by the parties on such matters, the underpinnings of the dispute began in an economic downturn which placed the Defendant Washington Trust Bank in a precarious position as the creditor in regard to a number of very large loans made to a real estate developer by the name of Marshall Chesrown and various entities under his control. The lawsuit was brought as a class action and sought to prosecute multiple types of legal claims which were winnowed into a smaller whole over the course of extensive motion practice. The claims were strenuously contested by the defendants and the litigation was vigorous and, at times, very contentious. The time and labor expended by both sides to the case was enormous, albeit generally, but not always, commensurate to the economic stakes put at issue by the Plaintiffs' claims, as described *supra*. On balance, this factor supports an award of fees because of the need for Defendant to mount a substantial legal effort, with its attendant time and expense, to defend the claims. However, this factor also requires that the Court consider the fact that the Defendants hired multiple law firms, with many different attorneys and support personnel, in doing so. The fact that the Defendants brought in multiple law firms was a choice they were free to make; however, doing so does not mean that it would be reasonable to make an award for all such fees against the Plaintiffs.

As to the novelty and difficulty of the questions, certain matters were relatively straightforward and others were complex and intricate. As with any class action, there were certain issues relating to class action status at the beginning and which surfaced again from time to time during the unfolding of the litigation. The issues required a knowledge of class action procedures and law, and counsel handled those matters without difficulty on both sides. The various types of claims brought by Plaintiffs became the subjects of dispositive motion practice, which required thorough and careful briefing. These also were handled, for the most part,

efficiently and competently by defense counsel until the end of the case, at which time many of the same issues were relitigated or sought to be relitigated after the Dunn & Black firm became involved in the case, along with issues that had not been raised previously. Hence, additional motion practice ensued, covering some of the same ground as previously trod and in some instances in a manner which contradicted prior positions and arguments made by defense counsel, all of which contributed to a torrent of motions filed in the several months leading up to the trial. At that point, the prior efficiencies were largely lost.

There were difficult, but not necessarily novel, choice of law issues, and related to those questions, questions as to the exact nature of the law of a particular state whose law applied to a particular issue of the case.[5] Some of those issues were particularly important to the liability and damage disputes in the case and both sides expended great effort in briefing and arguing those matters. The Court is satisfied that as to those details, the novelty and difficulty factor justified the work performed. In sum, these factors favor and support an award of fees and costs.

**(ii)  Factor C**

In considering factor (C), the Court considers the "skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law." To make this assessment, the Court first considers the particular field of law involved, and then the skill and experience/ability prong. Here, the case was filed as a class action case, which required that the various requisites of a class action case under the federal rules of procedure and applicable law be satisfied. The Court is satisfied that defense counsel, particularly Mr. Burnside, had sufficient expertise in this area of the law to properly deal with the issues raised by the class

---

[5] Prior decisions in this case describe in greater length the choice of law issues raised by the factual setting of this case which involved real estate in Idaho, a bank based in Washington, and entities and individuals from multiple states, with multiple different contract documents.

action status and to conduct of the defense of the case on those issues. Next, the case as initially filed raised various types of legal claims, including breach of contract claims and fraud claims. The Court is also satisfied that defense counsel with the lead roles in the defense of the case had sufficient skill and experience necessary to defend and direct the work undertaken by those with less skill or experience, so that the work that was done was appropriate to the task at hand. There were multiple layers to the case to which this particular factor applies, but in no instance did the Court question whether the attorneys representing the Defendants either already had the necessary knowledge and experience, or could not gain the same in an efficient and appropriate manner. This factor favors an award of fees and costs.

### (iii)    Factor D

This factor considers the prevailing charges for like work, and in particular the "fee rates generally prevailing in the pertinent geographic area," meaning the "area from which it would be reasonable to obtain counsel."[6] Doing so in this case requires some understanding of the nature of the legal market in North Idaho and Eastern Washington.

In the contemporary legal market of North Idaho, to include the Coeur d'Alene area, it is commonplace for lawyers practicing in both civil law and criminal law to be admitted to practice in both Idaho and Washington. It is not a universal circumstance that a lawyer will be licensed to practice in the courts of both states (to include state and federal court), but it is frequently found and more so each year. Particularly in federal court, the lawyers who appear are generally lawyers who practice in both states. Hence, it is not unusual for a law firm to have an office in both Spokane and in Coeur d'Alene. Geographically, culturally, and economically, Eastern

---

[6] These guidelines are found in two appellate decisions in the same underlying case, *i.e.*, *Lettunich v. Lettunich*, 111 P.3d 110, 120 (Idaho 2005) and *Lettunich v. Lettunich*, 185 P.3d 258, 262–63 (Idaho 2008).

Washington and North Idaho are very much intertwined and that is also largely true for the practice of law.

Similarly, lawyers from the Boise area also handle cases and provide legal advice in North Idaho and some North Idaho lawyers will handle cases and advise clients in the southern portion of the state. It is less common, however, for attorneys from Seattle to appear in North Idaho courts. And, it is uncommon for cases tried in a court in North Idaho to have attorneys from outside of Idaho, or outside of the Coeur d'Alene/Spokane region, involved as lead counsel. Importantly, defending the issues involved in this case also did not require that counsel from outside Idaho or Eastern Washington be involved, as experienced counsel with the necessary expertise can be found in those geographic regions.

From those details, the Court finds that the "pertinent geographic area," that is, the "area from which it would be reasonable to obtain counsel" for purposes of this case is Idaho and Eastern Washington. The prevailing rates charged by the lawyers for the Defendants who are from outside those regions area are greater than the prevailing rates charged for lawyers of similar experience and expertise from within those regions, and therefore the Court has made reductions in the allowed rates, as is further described elsewhere in this decision.

**(iv)     Factor (E)**

The Court is to consider whether the fee is fixed or contingent, under factor (E). Here, there was a fixed fee agreement as to each of the firms representing the Defendants. However, whether the fee was fixed or contingent is not important here, where the court is asked to determine the reasonableness of an award of fees and costs to be awarded to the Defendants.

**(v)     Factor (F)**

This factor deals with "the time limitations imposed by the client or the circumstances of

the case." The only possible application of this factor to this case would involve the appearance of the Dunn & Black law firm, shortly before trial. Whatever time limitations may have been "imposed" in that context were entirely at the election of (and therefore "imposed" by) the Defendants, but not in a context that would support an award of fees. To the contrary, as described elsewhere in this decision, the involvement of the Dunn & Black firm led to an inevitable duplication of effort, the expense of which Defendants are not entitled to recover.

### (vi)     Factor (G)

Here, the Court is to consider "the amount involved and the results obtained." As described elsewhere in this decision, the Plaintiffs in this case valued their case in the tens of millions. Further, the claims and the nature of the proof they put in the record, and sought to put in the record, were intended to put the Defendants and their officers in a very negative light. It quickly became apparent in this case that both because the Plaintiffs "valued" their case in the amount that they did, and because their litigation strategy was purposefully intended to attack the reputation of the Defendants and their employees, the Defendants understandably chose to defend the Plaintiffs' claims fully and vigorously. Hence, it is completely accurate to say that the amount involved (and within that, the nature of the claims and the nature of the proof involved), and the results obtained, support an award of fees in favor of Defendants. The Court describes those details not to convey a qualitative opinion about the Plaintiffs' case; rather, the information is set out to describe the legal weapon aimed at Defendants, and to illustrate the conclusion that Defendants would choose to mount the strongest defense possible.

### (vii)    Factor (H)

This factor brings in an assessment of the undesirability of the case, in that a lawyer's decision to take on an otherwise undesirable case and to then prevail in the same is a factor that

would support an award of fees and costs. This factor is not applicable to this case.

**(viii)    Factor (I)**

Here, the Court is asked to evaluate the nature and length of the professional relationship with the client. Other than as described below with respect to attorney William Appleton, the Court has not been provided with any information about this factor by the different law firms. If the Court frequently saw cases involving the Defendants and law firms representing the Defendants, such information might be readily obvious to the Court; however, it is not here. In addition, the Court sees no sensible connection between the amount of any award and the nature and length of any professional relationship between the law firms and the Defendants. Therefore, this factor neither supports nor detracts from an award of fees and costs except as to Mr. Appleton.

**(ix)    Factor (J)**

An obvious place of comparison under Rule 54(e)(3) is to consider awards that have been made in similar cases, which is the specific language of factor (J). Defendants have not offered any specific information on this factor.[7] The Court's review of fee awards in other cases in the District of Idaho has revealed cases that have some similarities to this case, although none that is precisely similar in the nature of the claims and the unfolding of this lawsuit over its full course. Hence, the court finds this factor to be of some support for an award, particularly as to the hourly rates awarded to attorneys involved in such cases.

---

[7] The briefing and supporting declarations and detail about attorney fees and costs that were submitted in connection with the motion for fees say nothing at all about the Rule 54(e)(3) factors as context for the motion for fees. Nonetheless, the Court must examine the factors against the information that is in the record and against the collective knowledge the Court has of the case having presided over it from beginning to end, and the Court has done so.

### (x)  Factor K

This is a very specific factor, which allows the Court to permit the recovery by a prevailing party of the cost of automated legal research: "the reasonable cost of automated legal research (Computer Assisted Legal Research), if the court finds it was reasonably necessary in preparing a party's case." To support such an award, however, the Court must find that the research was reasonably necessary, and then award only the reasonable cost of such computer research.

Davis Wright Tremaine billed Defendants expenses for "Law library services" totaling $1,068.06 (Dkt. 392-19), but there is no detail as to what, exactly, such services involved. Perhaps there were computerized legal research expenses involved; perhaps not. Regardless, it is the burden of the party seeking to recover such expenses to support the claim, and that has not been done here. Hence, Defendants will not be awarded any recovery for these charges under I.R.C.P. 54(e)(3)(K).

Dunn & Black billed expenses for "Westlaw-Legal Research" totaling $5,804.67. Childress Aff. Ex. H pp. 39–40 (Dkt. 392-10). The Court is aware that contemporary litigation, particularly in a case such as this one, draws heavily upon computer assisted legal research. In the best use of such tools, there are efficiencies and savings. But as with all such tools, they also lend themselves to wasteful practices. It is sometimes difficult to know where the line is between the two. In this case, however, one line can clearly be drawn and that is the fact of the duplication of effort that inescapably occurred when the Dunn & Black firm became involved in the case. Even if the attorneys in the two offices attempted to avoid such duplication, the very fact that a new law firm became involved very late in the game required and resulted in such duplication in obvious ways such as the need to "learn" what the case was about, and to "learn"

the facts and legal issues. Similarly, the interactions between the two firms over strategies, meetings with the clients, even decisions about who should do what, all involved duplication of effort that would not have occurred but for the Defendants' decision to bring in a law firm completely new to the case only a few months before trial and to then give that firm a significant amount of responsibility, if not the lead responsibility, for handling the case going forward. Hence, the Court has decided that the requested awards of both firms must be reduced to account for duplication of efforts, as described elsewhere in this decision, and the rationale for doing so is equally applicable to the expense of computer assisted legal research. Accordingly, the Court will apply this factor to reduce the amount requested for the cost of computer assisted legal research by ten percent as described to follow.

### (xi) Factor L

This is the catch-all factor, which permits the Court to consider other relevant facts which the Court deems appropriate. The Court discusses the reasons for its decision to award fees and costs, and the amount of such an award, at great length in this decision and to the extent that any of the reasoning described for its decision is not specifically referenced above, or does not neatly fit within any of factors (A) through (L), then the Court deems by this reference to include such information, facts and reasoning as additional factors deemed appropriate by the Court, for its decision, under Factor L.

### 3. Dunn & Black, P.S. Fees.

The attorney fee request for work done by Dunn & Black, P.S. is supported by the affidavit of Bil G. Childress. (Dkts. 392-2 through 392-10). The motion seeks $549,892.00 for 2,143.3 hours of work performed by seven attorneys, two paralegals, and one legal intern. Childress Aff. ¶¶ 17, 20 (Dkt. 392-2).

In considering the request for attorney fees for work performed by Dunn & Black, the Court first evaluated whether the hourly rates requested for each timekeeper were reasonable, by considering the prevailing charges for like work and awards in similar cases under I.R.C.P. 54(e)(3)(D) and (J). Defendants request an hourly rate of $400 for Robert Dunn, $350 for John Black, $300 for Susan Nelson, $250 for Richard Wetmore, $190 for Alexandria John, $190 for Bil Childress, and $175 for Adam Chambers. The Court finds that the requested hourly rates are reasonable for each of these attorneys. As to each attorney, the requested rates are within the range of recent awards in the District of Idaho for similarly experienced attorneys, and they fall within the reasonable rates of lawyers in the pertinent geographic area. Thus, they are consistent with the prevailing charges for like work and awards in similar cases. Additionally, the Court finds that the requested hourly rates of $115 per hour for paralegals Maureen Cox-O'Brien and Shellie Garrett and $105 per hour for legal intern Brandon Dockins are reasonable.

Next the Court considered the time and labor required. At the outset, the Court reduced Defendants' request by striking time entries that are non-recoverable because they are too vague to evaluate (therefore providing insufficient evidence of an entitlement to recovery). The Court also struck in whole or in part certain time entries that describe strictly clerical tasks, that are excessive in duration for the work described, or that are not sufficiently connected to the case (e.g., Defendants will not be awarded attorney fees for work related to a potential bad faith claim between Defendants and their insurer). Nor are Defendants entitled to recover time billed for counsel to travel from Eastern Washington to North Idaho each day of trial. *Smith v. Mitton*, 104 P.3d 367, 376 (Idaho 2004).

After striking approximately 30 hours for such reasons, the Court then reduced the remaining hours across the board by 10% to account for the inescapable duplication of effort

between Dunn & Black timekeepers and Davis Wright Tremaine timekeepers. By way of example, but not the only such example, within the first few months of Dunn & Black becoming involved in the case, there were approximately 30 time entries with explanations such as "Review pleadings and key client documents," "Outline relevant court orders," "Review court pleadings," "Research re: Plaintiffs," and "Review pleadings re: deadlines and court protocols." There are also dozens of entries where Dunn & Black attorneys corresponded with Davis Wright Tremaine attorneys on issues related to motion practice or trial, including instances where both firms worked on some of the same briefs. That is not to say that each firm independently wrote its own brief; rather, the Court is willing to presume some collaborative effort in the drafting and revising. But such instances were commonplace, and happened with multiple briefs and, sometimes, multiple revisions of a brief. There is nothing inherently improper about this; however, the inefficiency of collaborating and coordinating a brief between different firms justifies a reduction for duplication of effort.

Additionally, Defendants had at least five attorneys at the courthouse during each trial day, and more working back in their offices. Dunn and Black had two or three attorneys present, Davis Wright Tremaine had two attorneys present, and sole practitioner William Appleton was present. The Court will not speculate on whether Defendants could have prevailed with fewer attorneys present at trial. But the clients' choice to staff this case with that many attorneys at the trial carries with it some duplication of effort. Even if Defendants were willing to bear the expense of such duplication, it is not reasonable to require that Plaintiffs' bear that expense in an award of fees. Hence, because of examples of time entries with obvious specific duplication of efforts between Dunn & Black and Davis Wright Tremaine and the certainty of other duplication even if not spelled out in the time entries, an elimination of some of the time entries entirely and

a 10% reduction of the remainder of the requested hours is appropriate to render the request reasonable.

After striking requests for non-recoverable time and reducing the balance of the total hours by 10% due to duplication, Defendants' request for attorney fees for work performed by Dunn & Black is modified to $488,151.72. Defendant also seeks $5,804.67 for automated legal research performed by Dunn & Black. Childress Aff. Ex. H pp. 39–40 (Dkt. 392-10). As discussed *supra*, this amount will be reduced, by the same 10% factor applied to other fees, to account for duplication between firms. Accordingly, $5,224.20 will be added to the subtotal of $488,151.72, to reach a sum of $493,375.92.

As a final step before ordering an award amount regarding Dunn & Black, the Court evaluated whether the modified amount requested was justified by considering the amount involved and the results obtained, pursuant to I.R.C.P. 54(e)(3)(G). Defendants' total attorney fee request for all timekeepers from all firms is $2,097,011.61 (Dkt. 392). As late as September 2015, six months before trial, Plaintiffs alleged total damages greater than $175,000,000. Burnside Decl. ¶ 5 (Dkt. 392-11); Burnside Decl. Ex. A p. 5 (Dkt. 392-12). Plaintiffs estimated a recovery of $4,800,000 in attorney fees as part of that calculation. *Id.* Here, where Defendants' total requested attorney fees are slightly more than 1% of the amount Plaintiffs contended to be at risk in the lawsuit, and significantly less than half of the attorney fee award Plaintiffs estimated for themselves if they had prevailed, an award of the modified amount requested above for Dunn & Black's work is justified by the amount involved and the results obtained. Therefore, Defendants are awarded the sum of $493,375.92 for work performed by Dunn & Black.

### 4. Davis Wright Tremaine LLP Fees.

The attorney fee request for work done by Davis Wright Tremaine LLP is supported by a declaration executed by attorney Fred B. Burnside. Burnside Decl. (Dkt. 392-11). The declaration was declared under penalty of perjury and otherwise complies with 28 U.S.C. § 1746. *Id.* at p. 22. Defendants seek $1,402,323.65 for 4,280.6 hours of work performed by four attorneys and one paralegal with Davis Wright Tremaine. *Id.* ¶¶ 38, 47–55.

In considering Defendants' request for attorney fees under I.R.C.P. 54(e)(3) for work performed by Davis Wright Tremaine, the Court first evaluated whether the hourly rates requested for each timekeeper were reasonable, by considering the prevailing charges for like work and awards in similar cases under I.R.C.P. 54(e)(3)(D) and (J). For the Davis Wright Tremaine attorneys, Defendants request an average hourly rate[8] of $558 for Monty Gray, $425 for Fred Burnside, $325 for Rebecca Francis, and $279 for Ross Siler. Defendants also request an average hourly rate of $178 for paralegal Jason Schattenkerk. In considering the reasonable rates for such attorneys against the rates of similarly experienced attorneys in the pertinent geographic area, the Court finds that for work performed by Mr. Gray, who has over 45 years of experience as an attorney, $425 is a reasonable hourly rate, which is at the upper limit of recent awards in the District of Idaho. As to Mr. Burnside, the Court finds that an hourly rate of $400 is reasonable given his experience and the high quality of the work he performed in this matter. Based on their experience and the award amounts in similar cases for similarly-experienced attorneys, the Court finds that hourly rates of $300 for Ms. Francis and $190 for Mr. Siler are

---

[8] The billed rates for some Davis Wright Tremaine timekeepers increased during this multi-year litigation. For these purposes, the Court has calculated the requested hourly rate for each timekeeper based on the total dollars billed divided by the total hours billed (rather than evaluating separately, for each timekeeper for each rate they billed, whether the rate was reasonable at that time).

reasonable. Finally, the Court finds that $150 is a reasonable hourly rate for work performed by paralegal Jason Schattenkerk.

Having decided the reasonable hourly rates for Davis Wright Tremaine timekeepers, the Court next considered the time and labor required, pursuant to I.R.C.P. 54(e)(3)(A). The firm became involved in the case in July 2013 (Dkts. 40, 41, 42) and continued representing Defendants through, and after, trial. Mr. Burnside's declaration details the firm's efforts in avoiding unnecessary effort and controlling costs in a lengthy and complicated case. He describes extensive document production and depositions, repeated parrying of Plaintiffs' claims for fraud and punitive damages, protracted pretrial motion practice, and other efforts. Burnside Decl. ¶ 7 (Dkt. 392-11). He also notes that Defendants did not file any motions to compel and that Davis Wright Tremaine attorneys participated in over twenty depositions, only six of which were taken by Defendants. *Id.* ¶¶ 14, 15–18. Further, he lists several measures counsel undertook to expedite the litigation and minimize costs, including taking some depositions by video conference, consolidating other depositions to reduce travel and preparation time, attempting to mediate their claims, and staffing the case with as few people as possible to maximize efficiency. *Id.* ¶ 37. Finally, Mr. Burnside explains that Defendants are not seeking roughly $55,000 in attorney fees billed by timekeepers besides the five individuals at Davis Wright Tremaine who primarily staffed the case. *Id.* ¶ 38. The Court finds that the time and labor expended by Davis Wright Tremaine timekeepers was reasonable, relying in part in doing so upon Mr. Burnside's undisputed assertions about the efforts undertaken to limit costs. The Court will not strike or reduce any of the time entries as clerical, excessive, or unrelated to the case.

However, the Court will reduce certain Davis Wright Tremaine time entries by 10% due to the duplication of efforts with the Dunn & Black firm, as was discussed above regarding the

time entries of the Dunn & Black timekeepers. This reduction applies to all Davis Wright Tremaine entries from November 1, 2015 onward. No reduction is applied to the Davis Wright Tremaine entries prior to November 1, 2015.

After adjusting the timekeepers' hourly rates and reducing the request by 10% for time billed from November 1, 2015 forward due to duplication, Defendants' request for attorney fees for work performed by Davis Wright Tremaine is modified to $1,150,322.80.

As a final step, the Court evaluated whether the modified requested amount was justified by considering the amount involved and the results obtained, pursuant to I.R.C.P. 54(e)(3)(G). The analysis is identical to the analysis regarding Dunn & Black: Given the high stakes and the favorable results obtained, the modified requested sum is justified. Therefore, Defendants are awarded the sum of $1,150,322.80 for work performed by Davis Wright Tremaine.

### 5. William Appleton Fees.

The attorney fee request for work done by William Appleton is supported by an affidavit sworn by Mr. Appleton, who is an attorney. (Dkt. 392-21). The motion seeks $9,192.00 for 76.6 hours of work, at a rate of $120 per hour, performed in March 2016. Almost all of this work was performed during trial. The motion also seeks $484.46 for airfare and taxi charges from and to the Boise airport for a pretrial conference held December 17, 2015. Appleton Aff. ¶ 8. These travel expenses are not attorney fees and will not be included in the attorney fee award.

The Court finds that Mr. Appleton's rate and billed hours are reasonable. In making this finding, the Court has considered the I.R.C.P. 54(e)(3) factors. Most relevant to the Court's consideration were factors (A), (D), (I), and (J). As to factor (A), the time and labor required, the Court notes that Mr. Appleton served as local counsel for the attorneys from Davis Wright Tremaine (Dkts. 40, 41, 42), so his presence during trial was required. Dist. Local R. 83.4(e)

("The designated local counsel must personally appear with the attorney on all matters heard and tried before this Court unless such presence is excused by the Court.") Of the 76.6 hours Mr. Appleton billed, 72.0 hours are for time spent attending trial and consulting with co-counsel. Appleton Aff. pp. 3–4 (Dkt. 392-21). Only 4.6 hours were billed for other purposes. *Id.* Of that, 4.0 hours were spent reviewing documents and court rulings to prepare for trial, and 0.6 hours were spent preparing the affidavit for attorney fees. *Id.* These time entries were all reasonable.

As to factors (D) and (J), requiring consideration of prevailing charges for like work and awards in similar cases, the Court finds that Mr. Appleton's requested rate of $120 per hour is significantly less than the prevailing charges for like work. Recent decisions in the District of Idaho have awarded substantially higher rates for attorneys with similar experience to Mr. Appleton. Moreover, the requested rate of $120 per hour is 20% less than Mr. Appleton's regular hourly rate of $150. Appleton Aff. ¶ 9 (Dkt. 392-21). As to factor (I), requiring consideration of the nature and length of the professional relationship with the client, Mr. Appleton has represented Defendant Washington Trust Bank pursuant to a monthly retainer contract for more than ten years. *Id.* ¶ 2. This fact supports Defendants' request for Mr. Appleton's fees because his long-standing relationship with one of the Defendants likely reduced the amount of effort, and therefore billing, necessary to represent Defendants in this matter.

Because Mr. Appleton's rate and billed hours are reasonable, Defendants are awarded the full $9,192.00 sought for Mr. Appleton's time.

### 6. K&L Gates, LLP Fees.

Defendants seek $135,119.50 in attorney fees for work done by K&L Gates, LLP.[9] The

---

[9] K&L Gates, LLP ceased representing Defendants in October 2013 (Dkt. 46). Dunn & Black counsel Bil G. Childress filed Defendants' Motion for Attorney Fees and Petition for Costs and included supporting documents prepared on behalf of each firm.

request is supported by a declaration signed by Amy Plotnik. Significantly, Ms. Plotnik is not an attorney. She did not provide any of the legal services. Mem. ISO Defs.' Mot. for Att'y Fees 5 (Dkt. 392-1); Decl. Amy Plotnik Re: Attorneys' Fees (Dkt. 392-22) ("Plotnik Decl.").

Her declaration states that she is an accounting manager at K&L Gates who is familiar with the billing system and records maintained by the firm. Plotnik Decl. ¶ 1 (Dkt. 392-22). Ms. Plotnik is not listed on the case docket as an attorney of record. Her name does not appear on the roster of attorneys admitted to practice before this Court. She has not been granted pro hac vice admission in this case. The Court has taken judicial notice of the fact that neither the Idaho State Bar nor the Washington State Bar Association[10] identifies Ms. Plotnik as an attorney. Nor is there any other evidence before the Court indicating that she is an attorney.

Ms. Plotnik's declaration is the only filing on record from anyone associated or affiliated with K&L Gates that supports Defendants' motion for fees. Idaho Rule of Civil Procedure 54(e)(5) requires that a claim for attorney fees "be supported by an affidavit *of the attorney* stating the basis and method of computation" (emphasis added). Ms. Plotnik is not an attorney. No K&L Gates attorney has otherwise filed an affidavit supporting Defendants' fee request for work performed by the firm. Neither Mr. Childress nor Mr. Burnside can properly support the fees claimed for K&L Gates. Accordingly, there is insufficient evidence before the Court to consider Defendants' request for an award of K&L Gates's fees.

Submission of an attorney's affidavit is not a mere formality. Attorneys are officers of the court. They are subject to discipline by this Court and by the Idaho State Bar or by an equivalent licensing body. An attorney's sworn certification provides inherent indicia of reliability and

---

[10] The K&L Gates attorneys who represented Defendants in this case were all based in Seattle, Washington, which is also where Ms. Plotnik executed her declaration.

truthfulness to a request for an award of attorney fees, particularly as to the necessity for the work performed and the reasonableness of the fees incurred. Moreover, affidavits and declarations must be based on personal knowledge. Implicit in an affidavit supporting a memorandum of costs is an assertion, based on personal knowledge, that the attorney fees requested are reasonable and appropriate.

Nothing in Ms. Plotnik's declaration suggests she has the experience or personal knowledge necessary to represent that the requested fees are reasonable and appropriate, nor could she have the experience and knowledge to make such representations. Finally, her declaration shows only that the firm billed the listed hours; it is not evidence that the hours billed were necessary, appropriate, and reasonable. Hence, Defendants have failed to properly support a request for a fee award for work performed by K&L Gates. No award will be made for any fees or costs incurred by the K&L Gates firm.

## ORDER

Based on the foregoing, and consistent with the Court's prior Memorandum Decision and Order Re: Defendants' Motion for Attorney Fees and Petition for Costs (Dkt. 492) granting in part and denying in part Defendants' Motion for Attorney Fees and Petition for Costs (Dkt. 392), **IT IS HEREBY ORDERED** that Defendants are awarded the sum of $1,652,890.72 in attorney fees against Plaintiffs Robert Cayne, Ronnie Rivera, Sean Rivera, and Ken McElroy.

DATED:  **August 16, 2018.**

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge